### NOLAN, U. S. Atty., v. MORGAN et al.
### No. 5039.

Circuit Court of Appeals, Seventh Circuit.
March 14, 1934.

Val Nolan, U. S. Atty., and Telford B. Orbison, both of Indianapolis, Ind., for appellant.

Samuel O. Pickens, R. F. Davidson, Fred C. Gause, Arthur L. Gilliom, and Owen Pickens, all of Indianapolis, Ind., for appellees.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

Appellees sued to enjoin appellant, as United States attorney, from enforcing against them certain regulations of the Secretary of Agriculture promulgated under supposed authority of the McNary-Mapes Amendment[1] of July 8, 1930 (21 USCA § 10), to section 8 of the United States Food and Drug Act of June 30, 1906. The appeal is from a decree awarding appellees a permanent injunction as prayed.

Appellees had been for some years in the business of processing, canning, and marketing dry, ripe peas, which were first soaked in hot water to soften them and to swell them to their original shape and color, and this process being following by further steps. Under the regulations of the Department of Agriculture formerly in force containers of the product designed to move in interstate or foreign commerce were required to be plainly labeled with the words "Prepared From Dry Peas."

After the adoption of the McNary-Mapes Amendment, the Secretary of Agriculture promulgated regulations for standardizing and labeling canned peas,[2] requiring the cans containing appellees' product designed

---

[1] "§ 8. * * * an article shall be deemed to be misbranded: * * *

"Canned Food. Fifth. If it be canned food and falls below the standard of quality, condition, and/or fill of container, promulgated by the Secretary of Agriculture for such canned food and its package or label does not bear a plain and conspicuous statement prescribed by the Secretary of Agriculture indicating that such canned food falls below such standard. For the purposes of this paragraph the words canned food mean all food which is in hermetically sealed containers and is sterilized by heat * * *; the word class means and is limited to a generic product for which a standard is to be established and does not mean a grade, variety, or species of a generic product. The Secretary of Agriculture is authorized to determine, establish, and promulgate, from time to time, a reasonable standard of quality, condition, and/or fill of container for each class of canned food as will, in his judgment, promote honesty and fair dealing in the interest of the consumer; and he is authorized to alter or modify such standard from time to time as, in his judgment, honesty and fair dealing in the interest of the consumer may require. The Secretary of Agriculture is further authorized to prescribe and promulgate from time to time the form of statement which must appear in a plain and conspicuous manner on each package or label of canned food which falls below the standard promulgated by him, and which will indicate that such canned food falls below such standard, and he is authorized to alter or modify such form of statement, from time to time, as in his judgment may be necessary."

[2] "32. Standard canned peas are the normally flavored and normally colored canned food consisting of the tender, immature, unbroken seed of the common or garden pea (Pisum sativum), with or without seasoning (sugar, salt), and with or without added potable water. The product is practically free from foreign material and, in the case of products containing added liquid, the liquor present is reasonably clear.

"38. Canned peas which fail to meet the above standard shall bear, in the form specified in paragraph 1, the legend, 'Below U. S. Standard.' The explanatory statement, except as provided in section (a), shall be 'Low Quality But Not Illegal.' "

"(b) Canned peas which fail to meet the above standard in that they are prepared from mature, soaked dry peas shall also bear, in the form prescribed in paragraph 2, the special statement 'soaked dry peas.' "

for interstate or foreign commerce to bear in conspicuous lettering the legend "Below U. S. Standard. Low Quality But Not Illegal. Soaked Dry Peas." Appellees were duly notified to so ship no such product unless so labeled. Declining to comply, they were threatened with prosecution and confiscation of the product undertaken to be so shipped.

There is no contention that dry peas are of themselves to any degree deleterious or unfit for human food, nor that appellees' process for canning them causes the slightest impairment of the product. It is likewise apparent that such labeling of the container would in a short time practically destroy the industry of canning dry peas designed for interstate or foreign commerce. This is not only apparent, but has been practically the result when this label was placed upon the cans. The evidence shows that it is so well recognized in the trade that such a label would destroy trade in the product that the label is generally known in the trade as "crepe label."

The production and distribution of canned dry or ripe peas is an industry not less lawful or commendable than the production and distribution of the immature peas, which the regulations prescribe as the standard for canned peas. The canning of ripe peas is not like the other a seasonal industry. The peas when dry through ripening are gathered, and will keep indefinitely in that state before canning; whereas the immature peas must be gathered and processed at once when they reach the suitable stage of maturity, after which delay of even a very few days will overdevelop them and render them unfit for the prescribed standard.

The regulations specify certain tests to be applied to give assurance that the immature peas have not passed beyond the degree of ripeness essential to constitute them "standard canned peas."

When the peas become hard and dry through the natural process of ripening they cannot, of course, comply with the standard thus fixed for canned peas. Processing restores their fullness and color, and renders them soft and edible. But they are a product essentially different from that of the canned unripe peas which are made the standard. Different processes are necessary. The long soaking in hot water, cooling and reheating of the dry peas would disintegrate and ruin the immature variety. The properties of the two products are very different. In the mature peas there is more of starch and less of sugar than in the immature peas, and the

mature have more of nutriment and food value than the immature. There is, of course, a difference in the taste, most persons probably preferring the immature peas, although, as was testified, this is a matter of the taste of the individual.

The canned dry peas sell in the market for considerably less than the immature product, which may be accounted for by the more general preference for the taste and consistency of the immature product, as well as the fact that the dry peas may be kept indefinitely and readily shipped long distances to canneries and may be canned at leisure, while the immature peas must be processed without delay and in canneries conveniently located with reference to the place where the peas are grown.

All this indicates that, notwithstanding the same vines produce the immature and the full-ripened peas, for the purposes of canning the two are products as essentially different as if taken from radically different plants, and were known by different names. As articles of commerce we think they must be regarded as in separate classes, each having its own properties and peculiarities. There are doubtless good, bad, and indifferent grades of dry peas as well as of immature peas; and to say that canned ripe peas are an inferior grade of canned immature peas is, in our judgment, at once illogical, unreasonable, and unfair.

To be sure, a customer desiring the immature canned peas should not have the dry peas imposed upon him, and vice versa. The object of such legislation and the regulations thereunder is to guard against deception of the public. Statutes and regulations adopted for that end are salutary and should be supported. The right of Congress to adopt such legislation for regulating interstate and foreign commerce, and to empower the making of suitable and reasonable regulations thereunder, must generally be conceded.

But, in view of what has been said, we cannot regard as "reasonable" the regulation which fixes immature, unripe peas as the standard for canned peas generally, requiring the dry peas product to be labeled in a manner which would convey to the public the impression that it is a degraded and inferior article of food, which in fact it is not.

Appellees' product might well be—as the evidence shows it is—a most excellent quality of the canned ripe peas variety and of high food value, and yet, under the regulation, be required to bear the legend "Low Quality." In our judgment, the very statement of the

474

proposition carries condemnation of the regulation which requires appellees to so brand their product.

We do not think that the statute contemplates, with respect to this product, that either immature peas or the dry peas shall be the generic product whereby the other is to be graded. If canned peas are to be considered the generic product, there should be a subclassification as to the immature and the dry products, each of which, if of good quality, is a standard food product and neither a subordinate nor an inferior of the other.

The McNary-Mapes Amendment (21 USCA § 10) is not directed toward adulteration of foods, but solely to their misbranding. Its purpose is commendable, but, if unreasonably applied, may work hardship and injustice wholly beyond its intended and lawful scope. As stated in the amendment itself, the regulations to be made under it should "promote honesty and fair dealing *in the interest of the consumer*," and the Secretary of Agriculture is authorized, from time to time, to make modifications therein "as in his judgment, honesty and fair dealing *in the interest of the consumer* may require." It cannot be in the interest of the consumer to drive from the market this useful and cheaper product through branding it so the public will not buy it. If the immature peas have an advantage in flavor or size or color which may give them corresponding advantage in securing a better price, it affords no reason for striking down the other and cheaper product. The amendment does not concern itself with competition between products, but only with so describing products that the public may not be readily deceived by substitution of products.

In our view, the entire legend with which it was demanded appellees should label their product is unwarranted and unreasonable. "Below U. S. Standard" should not be required, because the fixing of the one article as the standard is arbitrary and unreasonable to the same degree as if it had been required that the canned dry peas be the standard and the immature .peas a descent therefrom. "Low Quality" is of course a statement of what is not a fact, since the evidence all indicates that the product in question is not of low quality, unless indeed, as is not here contended, a low quality of ripe peas or a deleterious method is employed in the product. The words "Not Illegal" are not enlightening. If the product were illegal, it could not lawfully enter into foreign or interstate commerce as human food. The words serve only to ."damn with faint praise" any product whereon they appear. "Soaked Dry Peas" is a less objectionable but at the same time an unreasonable requirement as a brand. A fair inference therefrom is that the dry peas are simply soaked and then canned. The soaking is only a part of the process, and, if the purpose of the regulation is not to condemn a meritorious article, these words carry an imputation respecting a proper food which tends in no degree to protect the consumer, who needs no protection beyond that afforded by information which will reasonably apprise him of what he is buying.

It is not our function to prescribe a legend to be placed on appellees' containers in order to advise the public that the article in question is produced from ripe or dry peas and not from immature peas. Under a prior regulation of the Secretary of Agriculture appellees had long placed on their containers, in bold-face type, and have continued so to do, the statement "Prepared From Dry Peas." To those who pay attention to labels a statement of this nature would clearly indicate that the product was not that of immature, succulent peas, which the Secretary assumed to fix as the standard of excellence for all canned peas. Clearly this or some suitable equivalent would adequately protect the public, so far as any label can, against unwarrantable substitution of this product for that of the immature peas.

Concluding as we do that the regulation complained of, as applied to appellees' product, is unreasonable and unauthorized by the statute, we agree with the District Court, which reached the same conclusion, that there is no need to consider the question of constitutionality of the amendment. We refer with approval to Judge Baltzell's opinion in the District Court, 3 F. Supp. 143, particularly to his citation and discussion .of authorities and his consideration of some other propositions whereon we have not commented.

The decree is affirmed.