**GIBSON WINE CO., Inc. v. SNYDER et al.**
**No. 10978.**

United States Court of Appeals
District of Columbia Circuit.

Argued June 15, 1951.

Decided Jan. 10, 1952.

330

Frederic P. Lee, Washington, D. C., for appellant.

John J. Donnelly, Jr., Sp. Asst. to Atty. Gen., with whom Asst. Atty. Gen. H. G. Morison and Wallace A. Russell, Attorney, Bureau of Internal Revenue, Washington, D. C., were on the brief, for appellees John W. Snyder, Secretary of the Treasury, et al.

Theodore Jaffe and Manuel J. Davis, Washington, D. C., entered appearances for appellees Honeywood Distilleries, Inc., et al.

Before WILBUR K. MILLER, PRETTYMAN and BAZELON, Circuit Judges.

PRETTYMAN, Circuit Judge.

The Gibson Wine Company, Inc., is a California corporation which produces, bottles and distributes wine pursuant to a basic permit issued under the Federal Alcohol Administration Act.[1] Regulations duly promulgated under the Act[2] have since 1938 contained the following provision:[3]

"(5) Fruit wine derived wholly (except for sugar, water, or added alcohol) from one kind of fruit shall be designated by the word 'wine' qualified by the name of such fruit, e. g., 'peach wine,' 'blackberry wine.' "

On March 25, 1941, the Deputy Commissioner of Internal Revenue, having authority upon this subject, advised the District Supervisor in San Francisco that wine made from a variety of berries known as boysenberries or boysen blackberries would not be entitled to the designation "blackberry wine". That ruling was transmitted by the District Supervisor to a company engaged in the manufacture of wine from these berries.

On February 18, 1949, the Deputy Commissioner advised the same wine company that wine made from these berries might be labeled "blackberry wine", and the District Supervisor at Seattle issued a circular to all bonded wineries in his district, transmitting that information.

On November 30, 1949, the Deputy Commissioner wrote the Wine Institute that his office had undertaken a comprehensive study of the subject and had concluded that, al-

1. 49 Stat. 977 (1935), 27 U.S.C.A. § 201 et seq.

2. Regulations No. 4, Relating to Labeling and Advertising of Wine, 27 Code Fed. Regs. Pt. 4. The Federal Alcohol Administration and the office of Administrator were abolished and their functions transferred to the Alcohol Tax Unit of the Bureau of Internal Revenue and the Deputy Commissioner of Internal Revenue in charge of that Unit. Sec. 2 of Reorganization Plan No. III, 54 Stat. 1232 (1940), 5 U.S.C.A. § 133t; Treasury Order No. 30, 5 Fed. Reg. 2212 (1940).

3. 27 Code Fed. Regs. § 4.21(3) (5).

though from a horticultural standpoint the boysenberry is a variety of blackberry, it differs from berries commonly identified as blackberries and that the differences are recognized by growers, manufacturers, horticulturists, and government agencies; he made reference to the labeling of foods under the Food, Drug and Cosmetic Act, to the requirements of the Food and Drug Administration in prescribing standards of identity for preserves, jams, jellies, etc., to the Cold Storage Reports of the Department of Agriculture, and to the price listings of food brokers and wholesale distributors. The Deputy Commissioner said: "I am accordingly of the opinion that, under the provisions of Section 21, Class 5(e) of Regulations No. 4, Relating to Labeling and Advertising of Wine, any wine labeled as 'Blackberry Wine' should be derived, in whole, from one or more of the varieties of berries commonly identified for commercial purposes as 'blackberries' and 'dewberries' * * *" He listed the names of varieties which would thus be included under the label "blackberry wine" and concluded that a wine derived wholly from boysenberries should be labeled "boysenberry wine".

In the meantime the Gibson Wine Company, our present appellant, had, in June, 1948, commenced the production of berry wine from the boysen variety. After the Deputy Commissioner's ruling of November, 1949, it brought a civil action in the United States District Court for the District of Columbia against the Secretary of the Treasury and the Commissioner and Deputy Commissioner of Internal Revenue, seeking an injunction to restrain those officials from preventing it from labeling as "blackberry wine" wine produced from any variety of blackberry, including the boysen variety. Answer being filed, trial was had on the merits of the issues raised. Witnesses were presented, and exhibits were introduced. The court made findings of fact, reached conclusions of law, and entered judgment dismissing the complaint. 95 F.Supp. 145. This appeal followed.

The first point presented by appellant is that the Deputy Commissioner's ruling of November 30, 1949, was an attempt to modify or amend a regulation and was invalid because it was not approved by the Secretary, as required by the statute,[4] and no hearing was had prior to the promulgation of the ruling, as required by the statute [5] and by Section 4 of the Administrative Procedure Act.[6] The appellee officials say that the Deputy Commissioner's ruling was not an amendment or modification of a regulation but was merely an interpretative ruling. They say that interpretative rulings are within the authority of the Deputy Commissioner and are not within statutory requirements as to notice and hearing.

The distinctive characteristics of interpretative rulings, as contrasted with so-called regulations, have long been recognized. Administrative officials frequently announce their views as to the meaning of statutes or regulations. Generally speaking, it seems to be established that "regulations", "substantive rules" or "legislative rules" are those which create law, usually implementary to an existing law; whereas interpretative rules are statements as to what the administrative officer thinks the statute or regulation means. Discussion of the subject will be found in many places. See, for example, "Rule Making Under the Administrative Procedure Act" by David Reich, in Volume VII, New York University School of Law Institute Proceedings, pages 492, 516 (Feb. 1947), where the author says: "A substantive rule is one which, as I have said, is intended to implement the statutory structure or the statutory powers of an agency. An interpretative rule is one which does not have the full force and effect of a substantive rule but which is in the form of an explanation of particular terms in an Act. If you had an expression in a statute such as 'Interurban Railway,' the query might come up as to what is an 'interurban railway.' A particular agency may adopt a rule defining an interurban railway. That, in a sense, may be called an interpretative

---

4. Sec. 2(d) of the Federal Alcohol Administration Act, 49 Stat. 977 (1935).

5. Last paragraph of Sec. 5 of the Act, 49 Stat. 985 (1935), as amended, 27 U.S.C.A. § 205.

6. 20 Stat. 238 (1946), 5 U.S.C.A. § 1003.

rule." And also see, in the same volume, pages 389, 400–401, "The Impact of the Federal Administrative Procedure Act on the Federal Food, Drug, and Cosmetic Act" by Michael F. Markel.[7] Professor Davis discusses the subject at some length in his new book on Administrative Law, Section 55, and other references will be found there.

The term "rule" in the Administrative Procedure Act (Section 2(c), includes interpretative statements, but in the provisions relating to rule-making "interpretative rules" are specifically excepted from the requirements as to notice and hearing (Section 4(b) and (c).

■ We think the ruling of the Deputy Commissioner here under consideration was clearly an interpretative ruling. On its face it purported to be merely the opinion of the Deputy Commissioner as to the meaning of the regulation. In the action in the District Court the parties and the court treated it as an expression of opinion. We think that treatment was correct.

■ Since the Deputy Commissioner's ruling was an interpretative one, it was not subject to the requirements of approval by the Secretary, of a hearing prior to promulgation, or of the rule-making procedure of the Administrative Procedure Act. Such exemptions have effect on the weight which the courts will accord to the administrative view and thus affect the limits of the judicial review; so a question is suggested as to whether the District Court correctly gauged the extent of its power of review. In a case in which that question is presented for decision, the problem would be an interesting one. See Skidmore v. Swift & Co.[8] and Bowles v. Seminole Rock Co.[9] Professor Davis discusses the matter at some length in Sections 56 and 253 of his Administrative Law. However, in the posture of the case at bar, the question does not arise. The

District Court treated the Deputy Commissioner's ruling as a mere expression of opinion, examined the whole question on the merits *de novo ab initio,* made its own findings on the evidence before it, and reached its own conclusions upon the merits. Clearly the District Court gave the Deputy Commissioner's ruling no greater weight than was required; whether the court gave it less than the required weight does not arise. The case did not come to us upon an appeal from the administrative agency; it came as an appeal from a judgment of the District Court in a civil action for injunction. In such a case we will not reverse unless the findings are clearly erroneous or there is an error of law.

The trial court examined with care the propriety of the ruling. The question whether wine made from these berries should, pursuant to Regulations No. 4, be labeled "blackberry wine" or "boysenberry wine" was examined in the greatest detail at the trial, with a wealth of evidence, and the court made detailed findings as to the nature of the berries, their history, the characteristics of the wine made from them, and the commercial usages applicable to them. The court found, among many other things, "In the common language of the people, and to the consumer, boysenberries and blackberries are different kinds of fruit"; and "The labeling of wine made from boysenberries as 'blackberry wine' is misleading and deceptive to consumers." It concluded, among other things, "The interpretation of [the Deputy Commissioner] * * * was correct"; and "The labeling of wine made from boysenberries as 'blackberry wine' has been and would be misleading, inaccurate, and deceptive, and would fail to provide the consumer with adequate information as to the identity and quality of the wine." Thus the District Court was of

7. And see the opening paragraphs of Procedure in Administrative Rule-Making, Rep. Att'y Gen. Comm. Ad. Proc., c. VII (1941); Lee, Legislative and Interpretive Regulations, 29 Geo.L.J. 1 (1940); 1 Pike & Fischer Ad. Law (Statutes and Rules) 14–15, "Comment on Section 3" of the then-proposed Act; Yokohama Ki-Ito Kwaisha, Ltd., 1927, 5 B.T.A. 1248, 1255; and the cautionary notice which appears on the first page of all Internal Revenue Bulletins.

8. 1944, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124.

9. 1945, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700.

the same view as was the Deputy Commissioner upon the merits of the issue.

Appellant says that the ruling of the Deputy Commissioner and the findings of the District Court constitute an erroneous interpretation of the regulation, or, in the alternative, if they be a correct interpretation, the regulation is invalid because arbitrary and discriminatory. There appears to be no substantial doubt about two propositions: (1) that from the horticultural viewpoint the so-called boysenberry is a variety of blackberry; and (2) that commercially this variety of berry is generally known as a "boysenberry" and not as a "blackberry". The above-quoted provision of Regulations No. 4 requires that fruit wine derived wholly from one kind of fruit be designated "by the name of such fruit". The statute not only requires that the labeling be such as to prevent deception of the consumer but also provides that the labels should "provide the consumer with adequate information as to the identity and quality of the products". The problem, therefore, was to determine the name of the fruit which would give the consumer an adequate identification of the wine.

Appellant presses the point that the ruling of the Deputy Commissioner requires the use of a varietal name in the case of the boysenberry and a few other varieties, but permits all other varieties of blackberries to be labeled with the name of the species, "blackberries". It is true that from the scientific viewpoint, horticultural or botanical, the blackberry is a species, or a number of species, and the boysenberry is a variety, i. e., a subdivision of that species. Either name would be scientifically correct as the name of the fruit, depending upon whether the species or the variety was being designated. But the question here is not simply between the use of the scientific varietal name as against the scientific name of the species; another fact is in the case. This particular variety has become established in the commercial world under its varietal name. On menus, in nursery and seed catalogs, on price lists, on canned

fruits, jams and jellies, products from this variety are designated by the name "boysenberry" rather than by the name "blackberry". On the other hand, it appears that in the commercial world all but a few of the other varieties are known together, indiscriminately, by the species name "blackberry". The question, therefore, is whether under those circumstances the label of this variety should be in its established and known commercial name or in the scientifically accurate name of the species to which the variety belongs, the name which is commonly used to designate most of the other varieties of the species. Which label adequately identifies the kind of fruit to the consumer? The Deputy Commissioner was of the view that this product must be labeled with the name "boysenberry" because it is commonly known by that name; that is the "kind of fruit" it is commonly known to be. The District Court was of the same view upon the evidence before it. We cannot say that the conclusion of the court was erroneous as a matter of law or was plainly erroneous in respect to the facts.

Appellant says that the ruling of the Deputy Commissioner creates a discrimination in fact so gross and arbitrary as to be invalid. The evidence concerning commercial practices in respect to products other than wine from these berries, e. g., jams and jellies, sufficiently disposes of that contention.

Appellant urges that we follow the opinion and decision of the Court of Appeals for the Ninth Circuit in Willapoint Oysters v. Ewing [10] and says that that course would require that we reverse in the present appeal. But it seems to us that the position of the court in that case was in essence the same as that which we take here. The point was stated in that opinion thus: "Permitting one segment of a sea food industry to enjoy the exclusive use of a term naturally associated with and normally applied to an article of food in common use under a common name without the most cogent reasons directly pertinent to the protection of the consuming public, appeals to us as being

10.   1949, 174 F.2d 676, certiorari denied, 1949, 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527.

outside the bounds of reason and fairness." [11]

In short, there was in that case a common name in common use for an article of food, and the court would not approve a limitation of the use of that name to one segment of the industry. If, in the present case, we found the common name "blackberry" in common use for all horticultural blackberries, including the variety "boysenberry", we would reach the same conclusion as did the Ninth Circuit. The opposite premise of fact brings us by the same process of reasoning to our conclusion.

Appellant also urges that the Deputy Commissioner's ruling was arbitrary and capricious, in that it drew a line as of the date of the ruling. The Deputy Commissioner said: "The Bureau will not object to the continued labeling, as 'Blackberry', of wine heretofore produced from boysenberries or from blackberries. However, any winemaker desiring to continue producing wine from boysenberries or from boysenberries and blackberries will be required to label all such new production in the manner indicated above."

Appellant says that this difference in treatment of wine produced before November 30, 1949, and that produced thereafter demonstrated that the Deputy Commissioner was attempting to amend, and not merely to interpret, the regulation. It seems to us that he was merely attempting to alleviate the impact of his change in opinion. To make the new rule retroactively applicable to wine already labeled would have been harsh, probably involving the removal of many labels already placed. We do not see how this part of the ruling is demonstrative of the nature of the whole ruling.

Appellant asserts that the act of the Deputy Commissioner "has its basis in the economics of competition and geographic rivalries", but our attention is directed to no evidence to support that assertion.

We are impelled to observe in conclusion that a label showing both the species and the variety names of this particular product —such, for example, as "Blackberry Wine of the Boysenberry Variety"—in an appropriate format, would serve to meet the purposes of the statute and the meaning of the regulation, and would be scrupulously fair to all conflicting interests. But that is merely our view of what is desirable and not our view of what the regulation requires.

The judgment of the District Court is affirmed.

WILBUR K. MILLER, Circuit Judge (dissenting).

I dissent because I think the court errs in regarding the Deputy Commissioner's ruling as a mere interpretative opinion which could be promulgated without a hearing and without the approval of the Secretary of the Treasury. In my view the ruling clearly constituted an amendment or modification of the existing regulation and, therefore, is invalid because it was not preceded by a hearing and was not approved by the Secretary.

A regulation promulgated in 1938 provided: "Fruit wine derived wholly * * * from one kind of fruit shall be designated by the word 'wine' qualified by the name of such fruit, e. g., 'peach wine,' 'blackberry wine.' "

This was and is a plain, straightforward, easily understood regulation providing that wine produced from the blackberry shall be called "blackberry wine." There is no qualification, limitation, restriction or ambiguity in it. The generic term "blackberry" applies alike to all the varieties of that berry.

The Deputy Commissioner knew in 1938, when the regulation was promulgated, that there are scores of varieties of the blackberry, yet he did not frame the regulation so as to apply to some of them and not to others. He used the generic name. Had he intended to exclude one variety, he could and should, and doubtless would, have said so in the regulation—it would have been easy to do—and then the producers of the excluded variety would have had an opportunity to be heard before the regulation became effective.

Now the Deputy Commissioner has "interpreted" the regulation by holding that

11. Id., 174 F.2d at 697.

wine produced from the boysen variety, which he admits is horticulturally a blackberry, shall not be labeled "blackberry wine." He says the new ruling is an interpretation of the meaning of the word "blackberry" because the boysen variety—a relatively recent development and, as some think, a superior blackberry—is not commonly known commercially as such. That may be, but it does not destroy the fact that the berry in question is a blackberry, and that its producers should have been heard before it was excluded.

The Deputy Commissioner himself vacillated between two opinions as to whether the large and luscious newcomer should be recognized as a member of the family to which he concedes it belongs. In 1941 he said wine made from the boysen variety of the blackberry must not be labeled "blackberry wine." On February 18, 1949, he reversed that ruling. But on November 30, 1949, the Deputy Commissioner again changed his mind, and denied the designation "blackberry wine" to wine produced from the boysen type of blackberry.

Thus the situation is that the regulation of 1938 permitted the label "blackberry wine" to be applied to wine produced from any variety of the blackberry; and that on November 30, 1949, the Deputy Commissioner ruled in effect that wine produced from any variety of the blackberry may be labeled "blackberry wine" except that produced from one variety,—the boysen type.

The question for determination is whether the second 1949 ruling was a mere interpretation of the 1938 regulation, or an amendment or modification thereof. Did it merely clarify the meaning of the regulation, or did it modify its meaning? May the Deputy Commissioner deprive the Gibson Wine Company of what it apparently regards as a valuable right without granting an administrative hearing?

I have already shown sufficiently, I think, that the plain English of the regulation made it apply to wine produced from any of the numerous varieties of the blackberry, including the boysen. The new ruling "interprets" the regulation as though it read: "Fruit wine derived wholly * * * from one kind of fruit shall be designated by the word 'wine' qualified by the name of such fruit, e. g., 'peach wine,' 'blackberry wine'; except that the term 'blackberry wine' shall not be used to designate wine made from the boysen variety of blackberry because it is a comparatively new type of blackberry not yet commonly known commercially as such."

What is the difference between the amendment or modification of a regulation, which can be accomplished only after a hearing and with the approval of the Secretary, and a mere interpretative opinion concerning the meaning of the regulation? The court defines that difference thus: "* * * Generally speaking, it seems to be established that 'regulations', 'substantive rules' or 'legislative rules' are those which create law, usually implementary to an existing law; whereas interpretative rules are statements as to what the administrative officer thinks the statute or regulation means."

I suggest that a regulation which has a clear, plain and simple meaning does not need interpretation or clarification. The function of interpretation is to clarify language which is ambiguous or subject to more than one construction. I suggest further that a ruling which changes the unmistakable meaning of a regulation is not a mere interpretation thereof, but is a modification or amendment. A ruling which holds that the draftsman of a regulation intended to say something which he did say does not interpret language; it attributes to the draftsman an intention quite different from that which he plainly expressed.

Nevertheless, the court says the new ruling is a mere expression of opinion as to what the 1938 regulation means. Clearly it is not that. To the contrary, it is the expression of an opinion that the promulgating authority did not intend to provide what the regulation plainly says, but intended something else. Such a ruling is not mere opinion as to the meaning of language; on its face it is a modification or amendment of the regulation. Moreover, whether opinion or amendment, the new ruling has the force and effect of law, as far as the Gibson Wine Company and oth-

ers similarly situated are concerned. It must be obeyed.

The Deputy Commissioner says the boysen variety differs from other varieties of the blackberry. The statement does not support his theory that the ruling which excluded that variety from the generic term was not an amendment of the regulation. All the numerous varieties differ, each from the others, else they would not be varieties. I see no escape from the conclusion that the Deputy Commissioner's ruling singles out one variety and excludes it from the family, —something which the regulation had not done.

The court's opinion says: " * * * The statute not only requires that the labeling be such as to prevent deception of the consumer but also provides that the labels should 'provide the consumer with adequate information as to the identity and quality of the products'. The problem, therefore, was to determine the name of the fruit which would give the consumer an adequate identification of the wine."

That problem is not new. It was present in 1938 and was then solved by using the unqualified generic term "blackberry" in the regulation. When the Deputy Commissioner came to believe that blackberry wine should be labeled so as to show the variety from which it was derived, in order to give the consumer an adequate identification of it, he could not so require merely by saying that was what the regulation meant all the time. Wine made from the boysen blackberry may be somewhat different from wine made from other types of the berry, but it cannot be that wines made from the numerous other types are all alike and that only wine from the boysen type is different.

During oral argument I suggested from the bench that the Deputy Commissioner could attain his objective and do justice to all concerned by requiring that wine made from the boysen variety should be designated "Blackberry Wine (Boysen Variety)." Of course wines from other varieties should be similarly distinguished. The suggestion was not accepted.

The right to be heard is an important element of due process. In a borderline case,

an administrative agency should be quick to grant a hearing. I do not understand why the Deputy Commissioner was so loath to grant one in this case. To do so would have been much less arduous and time-consuming than to engage in this litigation. It would not be an answer to say the Gibson Wine Company had a hearing in the District Court. That court had no right to conduct a hearing, as it should have instantly declared the amendment invalid, and should have remanded the case for the administrative hearing to which the appellant was entitled. It cannot be assumed that the proceeding in court was an adequate substitute therefor.

For the reasons stated, I would reverse.