**CONTINENTAL DISTILLING CORPORATION, Appellant,**

v.

**George M. HUMPHREY et al., Appellees.**

**No. 11933.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 5, 1954.

Decided Nov. 24, 1954.

Mr. F. Joseph Donohue, Washington, D. C., with whom Mr. Abraham S. Goldstein, Washington, D. C., was on the brief, for appellant.

Mr. Frank H. Strickler, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., Oliver Gasch, Principal Asst. U. S. Atty., Lewis A. Carroll, Asst. U. S. Atty., and Wallace A. Russell, Atty., Alcohol and Tobacco Tax Legal Division, Office of the Chief Counsel, Internal Revenue Service, Washington, D. C., were on the brief, for appellees.

Mr. William J. Peck, Asst. U. S. Atty., Washington, D. C., at the time the record

was filed, also entered an appearance for appellees.

Mr. Frederic P. Lee, Washington, D. C., filed a brief on behalf of Anderson County Distilling Co., Inc., and 24 other distilling companies as amici curiae, urging affirmance.

Before EDGERTON, FAHY and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

On September 19, 1952, Dwight E. Avis, as head of the Alcohol and Tobacco Tax Division of the Bureau of Internal Revenue and one of the defendants, who are hereinafter referred to as appellees,[1] notified the Continental Distilling Corporation, plaintiff, referred to as Continental,[2] that certain whisky marketed by it should be labeled to show that it had been stored in reused cooperage. Continental sued in the United States District Court for a judicial declaration of invalidity of this ruling and for appropriate injunctive relief. The appeal is from the court's order dismissing the complaint on appellees' motion that it failed to state a claim upon which relief could be granted.

The governing statute is the Federal Alcohol Administration Act, 49 Stat. 977, as amended, 27 U.S.C.A. § 201 et seq. Reading § 205 with § 205(e) it is unlawful for any person engaged in business as a distiller,

> "To sell or ship or deliver for sale or shipment, or otherwise introduce in interstate or foreign commerce * * * any distilled spirits * * unless such products are bottled, packaged, and labeled in conformity with such regulations, to be pre-

scribed by the Secretary of the Treasury, with respect to * * * labeling * * * (1) as will prohibit deception of the consumer with respect to such products or the quantity thereof and as will prohibit, irrespective of falsity, such statements relating to age, manufacturing processes, analyses, guarantees, and scientific or irrelevant matters as the Secretary of the Treasury finds to be likely to mislead the consumer; (2) as will provide the consumer with adequate information as to the identity and quality of the products * * *; (4) as will prohibit statements on the label that are disparaging of a competitor's products or are false, misleading, obscene, or indecent * * *." § 205(e).

The complaint alleges that Continental began manufacturing the whisky in 1945 and stored it in barrels which had lost their char by prior use. On November 23, 1948, Avis' predecessor had advised Continental that containers could show the age of the whisky when it was used in blends, without reference to reused cooperage. On May 3, 1949, and again with an immaterial change on August 1, 1949, the Alcohol Tax Unit had approved a label for the whisky as "Embassy Club" with the legend "This Whisky is 4 Years Old". Continental decided, however, to mature it for two more years and delayed marketing it until August 1951. Large sums were expended in a successful marketing campaign, after which, the complaint continues, the 1952 ruling was made, irreparably injuring the whisky's marketability.

The regulation relied upon by appellees is the last unnumbered paragraph

---

1. The appellees other than Avis are the Secretary of the Treasury and the Commissioner of Internal Revenue who with Avis are charged by law with the responsibility of administering the applicable statute. No question is raised as to parties.

The functions of the former Federal Alcohol Administration were transferred to the Deputy Commissioner in charge of the Alcohol Tax Unit of the Bureau of Internal Revenue, pursuant to Reorganization Plan No. III, 5 U.S.C.A. § 133t note, under the Reorganization Act of 1939, 53 Stat. 561. Under further reorganization plans these functions were assumed by the Alcohol and Tobacco Tax Division, Internal Revenue Service, of which Division appellee Avis is Director.

2. The notification was to Continental through its parent company, Publicker Industries, Inc.

of Section 39(a) of Regulations No. 5 adopted March 2, 1938, 3 Fed.Reg. 486, 27 CFR § 5.39 (1949). It reads as follows:

> "Notwithstanding the foregoing provisions of this paragraph, in the case of whisky (as defined in § 5.21 (b), Class 2),[3] produced in the United States on and after March 1, 1938, and stored in reused cooperage, there shall be stated in lieu of the words '* * * is ———— (years and/or months) old', the words '* * * stored ———— (years and/or months) in reused cooperage', and in lieu of the words '* * * ———— (years and/or months) or more old', the words '* * * stored ———— (years and/or months) or more in reused cooperage'."

■ *First.* The complaint alleges that this regulation, interpreted to require "Embassy Club" to be labeled as having been stored in reused cooperage is invalid because the notice of hearing which preceded its promulgation did not inform interested parties that whisky produced at a proof in excess of 160° and stored in reused cooperage would be affected.[4] We think this contention unavailable to Continental. No problem with respect to "Embassy Club" was alive when the regulation was adopted March 2, 1938. The whisky was not even manufactured until 1945. When Continental then began its manufacture and in 1949 first applied for approval of a label there is no indication it was not fully aware of the regulation, which plainly gave notice

of its possible application to this whisky. In these circumstances Continental makes no case of lack of notice. We do not imply, however, that the notice was insufficient. It stated a purpose of the hearing to be to amend regulations to authorize certain "American type" whiskies, which do not include "Embassy Club", to carry labels claiming age for their period of storage in used containers; but the notice also forecasts amendments to create a standard of identity for "light-bodied" whiskies, which do include "Embassy Club", to permit their storage in secondhand containers and to claim age for the full period of such storage, 2 Fed.Reg. 2080 (1937). If the adequacy of the notice were before us it might well be held to have raised generally the subject of claims of age for whiskies stored in secondhand containers.

■ *Second.* It is urged that in prohibiting Continental from claiming age and requiring instead that it disclose the period of the whisky's storage in reused cooperage appellees have misinterpreted their own regulations. The argument is that "age" is defined in Article I(j) of Regulations No. 5 to include storage in oak barrels, that "Embassy Club" was so stored, from which it follows that "age" may be stated on its label.[5] The premise does not support the conclusion. Even were we to agree that "age" includes by definition the keeping of whisky of this type in reused oak barrels appellees would not thereby be precluded from requiring the label to indicate the manner of its aging.

---

3. Appellant concedes that "Embassy Club" is whisky as defined in § 5.21(b), Class 2.

4. The notice of hearing requirements are contained in Section 5(f) of the Act, 27 U.S.C.A. § 205(f).

"Embassy Club" is produced at a proof in excess of 160° and, as previously stated, is stored in barrels which have lost their char by prior use.

5. The text of Article I(j) of Regulations No. 5 is as follows:

"The term 'age' means the period during which, after distillation and before bottling, distilled spirits have been kept in oak containers, charred if for a whisky of American type other than corn whisky, straight corn whisky, blended corn whisky, or a blend of straight corn whiskies. In the case of American type whiskies produced on or after July 1, 1936, other than corn whisky, straight corn whiskies, blended corn whisky, and blends of straight corn whisky 'age' means the period during which the whisky has been kept in charred new oak containers." (27 CFR § 5.1(j) (1949))

*Third.* Continental also contends that the application to it of the reused cooperage regulation is not within the purposes of the Act to prevent consumer deception as set forth in § 205(e), supra, and constitutes discriminatory treatment of an arbitrary and capricious character without rational relation to those purposes. The bare allegation of paragraph 23 of the complaint that an interpretation of the regulation which prohibits "Embassy Club" from bearing the age statement is inconsistent with the statutory purposes is too general to sustain plaintiff's burden. See Pacific States Box & Basket Co. v. White, 296 U.S. 176, 184–186, 56 S.Ct. 159, 80 L.Ed. 138.[6] We turn to paragraph 25. It alleges that the regulation so interpreted has no rational relation to the statutory purpose "of preventing, inter alia, deception as to quality"; that the whisky is at least equal in quality to whisky which is not required to bear a statement that makes it unmarketable; and that such discriminatory treatment of Continental and its products, having no rational relation to the statutory purpose, is arbitrary, capricious and in excess of statutory authority. Since the prevention of consumer deception is not limited in § 205(e) to matters having to do with quality paragraph 25 of the complaint, if it stood alone, would hardly state a cause of action on the theory of absence of relation of the regulation to the full purposes of the statute. But when we read paragraph 25 with paragraphs 24 and 26 the charges of arbitrary discrimination cannot be put aside. Paragraph 24 states that appellees by their administrative interpretation permit corn whisky stored in reused cooperage to claim age on its label without mention of such cooperage, and that Continental's whisky, similarly entitled to claim age, stands upon the same footing with respect to the last unnumbered paragraph of Section 39(a). And paragraph 26 alleges that appellees have not found it necessary or proper to require a reused cooperage statement in order to provide adequate information as to the quality of whisky of Canadian producers who are allowed to market in the United States a product similar to Continental's free of the reused cooperage regulation, notwithstanding it is aged in such cooperage.

Applying the general rule often enunciated that the allegations of a complaint admitted by a motion to dismiss are to be construed favorably to a plaintiff, National Used Car Market Report, Inc., v. National Automobile Dealers Ass'n, 91 U.S.App.D.C. 313–314, 200 F.2d 359–360; Machado v. McGrath, 90 U.S.App.D.C. 70, 73, 193 F.2d 706, 708, certiorari denied, 342 U.S. 948, 72 S.Ct. 557, 96 L.Ed. 705, and having in mind at the same time that this rule in the context of the present case requires particularity of allegations to overcome the presumption of validity attaching to administrative action taken pursuant to valid delegation, Pacific States Box & Basket Co. v. White, supra, we hold that the complaint sufficiently alleges discrimination to withstand a motion to dismiss. It alleges facts which we cannot say do not show arbitrariness in this regard unless refuted or explained in the light of the purposes of the statute. The allegations are specific with respect to unequal treatment accorded Continental's whisky compared with both corn and Canadian whiskies stored like Continental's in reused cooperage. There well may be justifiable reasons for this. But they are neither matters of which we can take judicial notice nor of common knowledge so far as we are cognizant. Therefore, under Pacific States Box & Basket Co. v. White, supra, 296 U.S. at page 185, 56 S.Ct. at page 163, 80 L.Ed.

6. The Court there said:
  "* * * The burden is not sustained by making allegations which are merely the general conclusions of law or fact.
  * * *
  "* * * where the regulation is within the scope of authority legally delegated, the presumption of the existence of facts justifying its specific exercise attaches alike to statutes, to municipal ordinances, and to orders of administrative bodies. * * *" 296 U.S. at page 185–186, 56 S.Ct. at page 163, 80 L.Ed. 138.

138, Continental is entitled to opportunity to prove the alleged arbitrary character of the discriminatory treatment, which, if proved, would render the ruling unlawful. .

■■ Obviously in a matter of this kind not all differences or discriminations are unlawful. Unless so unreasonable in relation to the subject and its valid regulation as to be arbitrary or capricious, they are permissible. In deciding the matter the court must have in mind the prevention of consumer deception and not strike down reasonable differences which further this purpose. We hold only that we are not informed by common knowledge or by judicial notice that, in view of the alleged similarity between Canadian, corn and "Embassy Club" whiskies, a ruling requiring the latter alone to be labeled "stored in reused cooperage" though the others are also so stored, is not unreasonably discriminatory. The complaint fairly construed raises questions of fact in this regard which call for a solution through procedures other than dismissing the complaint on motion. The court may not substitute its judgment for that of the administrative agency and may not itself devise the appropriate regulations or labels, but it may require that those adopted avoid arbitrary discrimination between whiskies which are similar in respects pertinent to appropriate marketing practices. Administrative Procedure Act, 60 Stat. 237, 243, as amended, 5 U.S.C.A. § 1009(e) (B) (1); Nolan v. Morgan, 7 Cir., 69 F.2d 471, 473–474; Willapoint Oysters v. Ewing, 9 Cir., 174 F.2d 676, 697; and see Hamilton Nat. Bank v. District of Columbia, 81 U.S. App.D.C. 200, 156 F.2d 843; and Gibson Wine Co. v. Snyder, 90 U.S.App.D.C. 135, 194 F.2d 329. Should such discrimination exist, furthermore, it would lead to consumer deception rather than to its avoidance as sought by the statute. And one part of the trade would be disadvantaged in comparison with others on a basis not justified by a reasonable relation of the different treatment to the purposes of the statute. This would place the ruling or regulation outside the statute upon which it purports to rest.

■ *Fourth.* Continental makes a further contention that since it was authorized in 1949 by the Alcohol Tax Unit to label "Embassy Club" so as to show its age without reference to reused cooperage and expended large sums under this ruling in preparation for marketing its product, the ruling of September 19, 1952, under the same statute and regulations, requiring the reused cooperage legend, deprived it of a license without due process of law. But the earlier interpretation, giving it the full effect claimed by Continental, was in no sense a license. Quite independently Continental was then engaged in its business and has so continued. A particular method of carrying on this business in interstate or foreign commerce was subjected to regulation for purposes of preventing consumer deception. In carrying out this valid purpose through an appropriate exercise of the federal police power within the field of interstate commerce, Brooks v. United States, 267 U.S. 432, 436–437, 45 S.Ct. 345, 69 L.Ed. 699; Speert v. Morgenthau, 73 App.D.C. 70, 74, 116 F.2d 301, 305, the Government is not required to maintain a position once adopted if another is found necessary or desirable, notwithstanding loss may be caused individuals who have relied upon a different position previously taken. Bowles v. Willingham, 321 U.S. 503, 517–518, 64 S.Ct. 641, 88 L.Ed. 892; Queenside Hills Realty Co. v. Saxl, 328 U.S. 80, 82–83, 66 S.Ct. 850, 90 L.Ed. 1096.

The District Court issued a stay pending this appeal, permitting the marketing of "Embassy Club" without the use of the reused cooperage statement. Our decision will terminate this stay. Whether or not another should be substituted pending proceedings in the District Court we leave to that court. We do not intimate that our decision under part *Third* of this opinion does or does not call for such relief.

The order appealed from will be reversed and the complaint reinstated, but

only insofar as it states the claim respecting arbitrary discrimination, in relation to the purposes of the statute, discussed in part *Third* above.

It is so ordered.