**CONTINENTAL DISTILLING CORPORATION, Appellant,**

v.

**George M. HUMPHREY et al., Appellees.**

**No. 13469.**

United States Court of Appeals District of Columbia Circuit.

Argued March 21, 1957.

Decided July 3, 1957.

Petition for Rehearing Denied Oct. 10, 1957.

See also 17 F.R.D. 237.

Mr. F. Joseph Donohue, Washington, D. C., with whom Mr. Abraham S. Goldstein, Washington, D. C., was on the brief, for appellant. Mr. Thomas E. Lodge, Washington, D. C., also entered an appearance for appellant.

Mr. Harold H. Greene, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Lewis Carroll, Asst. U. S. Atty., and Wallace A. Russell, Asst. Head, Alcohol and Tobacco Tax Legal Division, Internal Revenue Service, were on the brief, for appellees.

Mr. Frederic P. Lee, Washington, D. C., filed a brief on behalf of Anderson County Distilling Co., Inc., et al., as *amicus curiae,* urging affirmance.

Before EDGERTON, Chief Judge, and FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This suit was brought in the District Court to challenge administrative rulings as to the required labeling of appellant's whiskey.

The question on this appeal is whether the record evidence compels the conclusion, contrary to the District Court's view, that the defendants-appellees have arbitrarily and unreasonably discriminated against the appellant Continental in applying to it a general regulation [1] which would require the label on the Embassy Club whiskey in issue here to state that it is "stored 6 years in reused cooperage"—a statement which would adversely affect marketability—when corn whiskey and Canadian whiskey are not required to carry the reused cooperage label although they too are stored in that manner. In a prior appeal in this case involving the sufficiency of the allegations of the complaint, Continental Distilling Corporation v. Humphrey, 1954, 95 U.S.App.D.C. 104, 220 F.2d 367, we noted that not all differences in the required form of labeling are unreasonable and arbitrary; that if the difference here reasonably furthers the prevention of consumer deception, it should not be struck down; and that the court cannot substitute its judgment for that of the administrative agency and devise the appropriate regulations or labeling. We held the complaint sufficient, however, to entitle Continental to an "opportunity to prove the alleged arbitrary character of the discriminatory treatment" accorded it. 95 U.S.App.D.C. at page 109, 220 F.2d at page 372. The case was remanded for further proceedings.

After an evidentiary hearing, the District Court entered judgment in favor of the defendants-appellees. The court made numerous findings and conclusions, some of which are briefly paraphrased in the remainder of this paragraph. Continental commenced to manufacture Embassy Club in 1945 but delayed marketing it until August, 1951. The whiskey, which is distilled at a high proof of between 185° and 189°, is not one of the traditional types of American whiskey, does not possess the taste, aroma, and other characteristics associated with any of them, and falls within none of the type designations recognized by 27 C.F. R. § 5.21(b). It differs markedly in taste, aroma, and other characteristics from corn whiskey, which is a traditional type of American whiskey with distinctive characteristics. Because the characteristics of corn whiskey are traditional and known, it is sufficiently identified to the consumer when labeled as corn whiskey of a certain age, without the reused cooperage statement. But a label comparable to that used on corn whiskey would not be sufficient with respect to Continental's product, since it fits within none of the presently recognized type designations. A difference in the manner of labeling Embassy Club is thus warranted, if not required, to aid in preventing deception and to notify the consumer as to its characteristics. Similarly, Canadian Whiskey is a traditional whiskey produced in Canada with distinctive identity and/or characteristics known to the American consumer; it is adequately identified when labeled as Canadian whiskey of a designated age, without the reused barrel statement. Although Continental's whiskey was produced to simulate Candian whiskey and, chemically and in taste and aroma, is within the general range of Canadian whiskeys, it is not Canadian whiskey and could not be so labeled. The ad-

---

[1]. 27 C.F.R. § 5.39(a), last par. (unnumbered), 1949, quoted at page 107 of 95 U.S.App.D.C. and at page 370 of 220 F.2d. Continental concedes that the regulation is valid as applied to other whiskeys. It challenges only the reasonableness of applying the regulation to it, notwithstanding that the regulation in terms does apply to it.

ministrator was clearly entitled to prescribe some kind of label that would differentiate Continental's product from Canadian whiskey and would put the consumer on notice as to its identity and characteristics.

These statements by the trial court, insofar as they are findings or conclusions of fact, are in our view warranted by the evidence on the whole record; certainly, we cannot say that they are "clearly erroneous," Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A. And from the legal standpoint we see no misconception on the part of the trial judge.

It appears that the regulation requiring the reused cooperage label was adopted in 1938, prior to the time Continental began to produce its whiskey. The label was selected to describe whiskeys which are stored in reused barrels and which do not fall into any of the recognized type designations, after a lengthy study and hearings during which other proposed designations (including "Canadian Type", "Neutral Spirits" and "Light-Bodied" amongst others) were considered and rejected.[2] The required label gives a truthful statement of age and of manner of storage during the aging period, since whiskeys do not mature as rapidly when stored in reused cooperage as when stored in charred new cooperage. Continental here does not suggest any kind of informative designation as a substitute—instead its only claim is that it should be allowed to label its product as American "whiskey" of a stated age. But such a label would not identify Embassy Club whiskey by type or give any indication to the consumer as to its characteristics, as do the corn and Canadian whiskey labels, and in

turn the agency could reasonably find that it would be likely to cause confusion with other American whiskeys and perhaps even deception.[3] The governing statute is designed to prevent "deception of the consumer," and to provide him "with adequate information as to the identity and quality" of the liquor he buys. 27 U.S.C.A. § 205(e). In the circumstances here, giving due weight to the trial court's findings and factual conclusions, we cannot say that there has been established an unreasonable and arbitrary discrimination against Continental in the form of labeling prescribed for it. The judgment of the District Court must therefore be affirmed.

We should not be understood as saying that a "type" label or some other informative label which would not adversely affect marketability, if such there be, should not preferably have been chosen. If Continental can devise an appropriate substitute for the reused cooperage label which would meet the statutory standards, the administrative process would no doubt provide a means by which Continental could apply for approval of the new label and perhaps make a showing sufficient to secure a reconsideration of the present ruling. Cf. 27 C.F.R. § 5.50 (1949).

Affirmed.

EDGERTON, Chief Judge (dissenting).

In my opinion a manufacturer who labels his product "Fine Whisky * * * Six Years Old Fully Matured" cannot reasonably be thought to be representing that his whisky is of any particular kind or is matured in any particular way.

2. Continental objected to the receipt in evidence of the record of these hearings on the ground that it was not challenging the validity of the reused cooperage regulation, except as applied to it, and the evidence was not received. For the same reason the records of administrative hearings in 1948 and 1949 on proposals to permit this type of whiskey to be called "Canadian Type" and to permit it to discard the reused cooperage statement were not received in evidence

in this case. We are thus not advised of the considerations which caused the administrative agency to reject any of the proposed type designations.

3. For example, Continental markets another whiskey called Embassy Club which is an American heavy-bodied whiskey with materially different characteristics, but uses exactly the same label (except that it claims 8 years of age instead of 6) which it seeks to use on the 6 year old light-bodied whiskey.

It follows, I think, that there is arbitrary discrimination when a manufacturer of one kind of whisky is required, and manufacturers of other kinds of whisky are not required, to state the fact, equally true of both, that their respective products are aged in re-used cooperage.