CONTINENTAL DISTILLING CORPORATION, a corporation,

v.

Honorable George P. SHULTZ, Individually, and as Secretary of the Treasury of the United States of America, et al., Appellants.

No. 72–1547.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 25, 1972.

Decided Dec. 29, 1972.

Mr. Carl D. Lawson, Atty., Dept. of Justice, of the bar of the Supreme Court of California, pro hac vice, by special leave of Court for appellants. Messrs. Harold H. Titus, Jr., U. S. Atty., Howard E. Shapiro, Lee A. Rau, Attys., Dept. of Justice, were on the brief for appellants. Mr. Morton Hollander, Atty., Dept. of Justice, also entered an appearance for appellants.

Mr. Willis B. Snell, Washington, D. C., with whom Messrs. William H. Smith and Michael L. Denger, Washington, D. C., were on the brief for appellee.

Messrs. Robert F. Sagle, Washington, D. C., John D. McElroy, New York City, and Abraham Tunick, Washington, D. C. filed a brief on behalf of Schenley Industries, Inc., et al. as amici curiae, urging reversal.

Before FAHY, Senior Circuit Judge, and ROBINSON and MacKINNON, Circuit Judges.

FAHY, Senior Circuit Judge:

Prior to July 1, 1972, domestic whisky, aged in used oak casks, i. e., reused cooperage, was required to be marketed with a label which advised that it had been aged in that manner, for the number of years also indicated.[1] The regulations so providing had been promulgated under the labeling provisions of the Federal Alcohol Administration Act.[2] This Act is administered under the authority of the Secretary of the Treasury, a present appellant, and the officials of the Alcohol, Tobacco, and Firearms Division of the Internal Revenue Service who are also appellants.

The reused cooperage legend had disadvantaged domestic whisky in competition with imported whisky, Canadian particularly, which, though aged in like manner, was not required to be so labeled. To ameliorate this situation a

---

1. 27 C.F.R. § 5.40(a)(1) & (4) (1972), which provide:

(a) *Statements of age and percentage for whisky.* In the case of straight whisky bottled under section § 5233, Internal Revenue Code (26 U.S.C. 5233), and domestic or foreign whisky, whether or not mixed or blended, all of which is 4 years or more old, statements of age and percentage are optional. As to all other whiskies there shall be stated the following:

(1) In the case of whisky, whether or not mixed or blended but containing no neutral spirits, the age of the youngest whisky. The age statement shall read substantially as follows: "—— years olds (sic)."

\* \* \* \* \*

(4) Notwithstanding the foregoing provisions of this paragraph, in the case of whisky produced in the United States and stored in reused oak containers, except for corn whisky, and for light whisky produced on or after January 26, 1968, there shall be stated in lieu of the words "—— years old" the period of storage in reused oak containers as follows: "—— stored —— years in reused cooperage."

The reused cooperage age statement is not required if such whisky is stored for four or more years prior to being bottled. It may be marketed merely as "Whisky" with no age statement. 27 C.F.R. § 5.40(a). *See,* Schenley Industries, Inc. v. Connolly, Civil No. 3674–70 (D.D.C., decided February 26, 1971). If an age statement is used in marketing such whisky then the reused cooperage statement must be added. 27 C.F.R. § 5.40(a)(5).

2. 27 U.S.C. § 205(e) (1970).

regulation was issued on January 26, 1968, designating a new type of whisky defined as follows:

"Light Whisky" is whisky produced in the United States at more than 160° proof, on or after January 26, 1968, and stored in used or uncharred new oak containers . . . .

27 C.F.R. § 5.22(b)·(3) (1972). The effective date of this new regulation was July 1, 1972,[3] whereupon, whisky distilled since January 26, 1968, and stored in reused cooperage, could be marketed with the light whisky label and the statement of age, "—— years old," without reference to storage in reused cooperage.

On December 14, 1971, Continental Distilling Corporation, appellee, applied for approval of a label designating whisky produced prior to January 26, 1968, as "LIGHT WHISKY" with the age statement "6 YEARS OLD," although such pre-1968 stock of whisky did not then qualify by definition as light whisky and would therefore have to be marketed merely as "Whisky" with or without the reused cooperage statement.[4] Continental's request was denied. The primary reason advanced by appellants for rejection of the label application was that the industry was to be on an equal competitive footing in using the new label, beginning July 1, 1972.

Continental then initiated this litigation to overcome this restriction upon its use of the light whisky label. Agreeing with Continental's position, the District Court ordered as follows: 1. that the language "on or after January 26, 1968" be deleted from the definition of light

whisky contained in the two regulations [27 C.F.R. §§ 5.22(b)(3) and 5.40 (a)(4)] above set forth; and 2. that appellants had invalidly denied the application of Continental for a Certificate of Label Approval for "Continental's Light Whisky, 6 Years Old."[5] We cannot sustain the District Court's disposition.

Appellants had found that to permit Continental to market as light whisky, six years old, its pre-1968 stock would have enabled Continental to obtain a substantial competitive advantage with consumers, since there is a general market preference for longer-aged whisky. As to the accuracy of this conclusion we cannot disagree, particularly when we adhere to the division of responsibility between court and regulatory · agency.

Continental contends, however, that appellants could not under their statutory authority consider competitive factors, that appellants are statutorily limited to considerations of consumer protection in the formulation of these labeling regulations. We turn to the statute. The Federal Alcohol Administration Act authorizes the issuance of such regulations,

(1) as will prohibit deception of the consumer with respect to such products or the quantity thereof and as will prohibit, irrespective of falsity, such statements relating to age, manufacturing processes, analyses, guarantees, and scientific or irrelevant matters as the Secretary of the Treasury finds to be likely to mislead the consumer;

(2) as will provide the consumer with adequate information as to the identi-

---

3. 27 C.F.R. § 5.22(b) (3). *See also*, T.D. 6945; 1968–1 Cum.Bull. 604, at 611 and T.D. 7020; 1970–1 Cum.Bull. 335, at 341.

4. See note 1, *supra*. Although 27 C.F.R. § 5.40(e)(1) (1972) permits the understatement of the age, we refrain from considering whether it would be permissible for pre-1968 stock to be marketed with an age statement applicable to whisky distilled on January 26, 1968, since Continental has *not sought permission* to market such whisky as "Light

Whisky," understating the age of its pre-1968 stock.

5. Appellants' motion for a stay of the order pending appeal was denied by the District Court on June 9, 1972. Accordingly, Continental's label application was approved on June 13, 1972. On June 26, 1972, this Court granted appellants' motion for an injunction pending appeal and stayed the effectiveness of the order of the District Court pending further order of this court.

ty and quality of the products
. . .;

. . . . . .

(4) as will prohibit statements on the label that are disparaging of a competitor's products or are false, misleading, obscene, or indecent; and

(5) as will prevent deception of the consumer by use of a trade or brand name. . . .

27 U.S.C. § 205(e).

There is no mention in subsection (e) of fair competition, except the prohibition of a label disparaging a competitor's products in subpart (4) above. But section 205, the mother section, is entitled "Unfair competition and unlawful practices," and subsections (a), (b), (c) and (d) of section 205 do prohibit a variety of unfair competitive and unlawful practices. While none specifically refers to labeling, a special subject left to subsection (e), yet the fact that all these subsections are combined in one over-all section dealing in large part with "Unfair competition," lends support to appellants' finding of a kinship between the provisions for fairness in competition with those for labeling to protect consumers from deception. All subsections of section 205 are inherently related. Moreover, a natural affinity exists between considerations of fair competition and consumer protection. Implementation of one often includes consideration of the other, and regula-

tions for one often bear consequences for the other.[6] In addition, the Senate Report in discussing the part of the Federal Alcohol Administration Bill concerned with unfair practices arising from false labeling refers not only to "consumer protection" but to "preventing unfair competition." S.Rep.No. 1215, 74th Cong., 1st Sess. 6 (1935).

It is of course possible to construe the latter reference as intended to apply only to competition unfair to the consumer, rather than to competition within the industry, but we decline so to limit it. Neither legislative history, statutory language, administrative interpretation nor judicial decision decrees that we should do so. As to the latter, in Arrow Distilleries, Inc. v. Alexander, 109 F.2d 397, at 402 (7th Cir.), cert. denied, 310 U.S. 646, 60 S.Ct. 1095, 84 L.Ed. 1412 (1940), the court stated that in general the authority granted by section 205(e) "is limited to such regulatory action, with respect to labeling, as will protect consumers from false, misleading or inaccurate representations and protect competitors from unfair trade practices in the use of labels."[7] Subsequently, our decision in Continental Distilling Corp. v. Humphrey, 95 U.S.App. D.C. 104, 220 F.2d 367 (1954), was decided without reference to the effect of the label on competition, since the case was concerned only with consumer protection. Our second *Continental* case,[8]

6. For example, false or misleading advertising not only is prohibited for reasons of protecting the consumer, but also for reasons of insuring fair competition. *See,* FTC v. Sperry & Hutchinson Co., 405 U. S. 233, 244, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972); Electronics Corp. of America v. Honeywell, Inc., 428 F.2d 191, 194–195 (1st Cir. 1970); and Montgomery Ward & Co. v. FTC, 379 F.2d 666, 672 (7th Cir. 1967). Other statutory labeling provisions similarly involve considerations of both consumer protection and fair competition. *See, e. g.,* FTC v. Mandel Brothers, Inc., 359 U.S. 385, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959) (Fur Products Labeling Act) and Marcus v. FTC, 354 F.2d 85,

87 (2d Cir. 1965) (Wool Products Labeling Act).

7. The affirmative statement in Gibson Wine Co., Inc. v. Snyder, 95 F.Supp. 145, 146 (D.D.C.1950), affirmed, 90 U.S.App. D.C. 135, 194 F.2d 329 (1952) that the purpose of the Act is clearly to protect consumers, is not inconsistent with the broader holding in *Arrow.* As is evident from our opinion it was unnecessary to go further in affirming the judgment of the District Court. The case in no way involved the question raised now by Continental.

8. Continental Distilling Corp. v. Humphrey, 101 U.S.App.D.C. 210, 247 F.2d 796 (1957).

however, does have some bearing on the present problem. While the majority opinion does not refer in explicit terms to competition, nothing therein is inconsistent with the consideration of such a factor; and the dissenting opinion of Judge Edgerton seems clearly to have had the competitive problem in mind:

.  .  . I think, that there is arbitrary discrimination when a manufacturer of one kind of whisky is required, and manufacturers of other kinds of whisky are not required, to state the fact, equally true of both, that their respective products are aged in re-used cooperage.

101 U.S.App.D.C. at 213, 247 F.2d at 799.

Furthermore, the motivation behind the new light whisky label, itself, was to place domestic whisky in a better competitive position with imported whisky, a concededly pertinent consideration of industry competition. While this reason would not itself justify imposing a competitive disadvantage upon one company not offset by overriding fairness to the industry as a whole, we do not find that Continental was entitled to the particular advantage it seeks. To permit it to market as light whisky, beginning July 1, 1972, six year old whisky aged in reused cooperage, stating its age without reference to reused cooperage, while the industry as a whole was in a position to market as light whisky only four year old whisky aged in reused cooperage, would require the court to overrule the judgment of appellants as to what was overridingly fair to the industry as a whole. We do not feel able to do that. Riddance of the reused cooperage reference could validly be inaugurated with the industry as a whole placed on an equal competitive basis. There was in our opinion no legal compulsion that appellants do otherwise.

We add that fair competition has a well-occupied place in our public policy represented by regulatory law, so much so that it has not been unusual for the courts to sustain its consideration in industrial regulation even though the particular regulatory statute before the court does not explicitly mention it. Northern Natural Gas Co. v. FPC, 130 U.S.App.D.C. 220, 226–228, 399 F.2d 953, 959–961 (1968); Municipal Electric Ass'n v. SEC, 134 U.S.App.D.C. 145, 149–150, 413 F.2d 1052, 1056–1057 (1969); cf. FTC v. Sperry & Hutchinson Co., *supra*, 405 U.S. at 239–244, 92 S.Ct. 898.

From what we have said it follows that not only could the appellants consider "fair competition" in its new labeling regulation, but that in doing so it did not act arbitrarily or unreasonably in denying approval of the inconsistent label sought by Continental.

Finally, we have considered Continental's contention with respect to the difference in the treatment by appellants of "light whisky" from their treatment of "grain spirits," in initiating as to the latter a new standard of labeling, dropping the necessity of stating the spirits had been stored in reused cooperage. The validity of the grain spirits standard adopted by appellants is not before us for decision, and we base our holding with respect to "light whisky" on the considerations we have deemed pertinent as to it.

Reversed.