UNITED STATES of America,
Plaintiff,

v.

FINLEY COAL COMPANY, a Partnership, and Charles Finley, an individual, Defendants.
Crim. No. 10303.

United States District Court,
E. D. Kentucky,
Jackson Division.

July 7, 1972.

Eugene Siler, U. S. Atty., Lexington, Ky., for plaintiff.

James S. Wilson, Pineville, Ky., Bert T. Combs, Louisville, Ky., Edward F. Pritchard, Jr., Frankfort, Ky., for defendants.

MEMORANDUM OPINION

HERMANSDORFER, District Judge.

The matters under consideration arise under a Motion to Dismiss all or several specific counts of a criminal indictment charging violations of the Federal Coal Mine Health and Safety Act of 1969,

Pub.L. 91–173, Dec. 30, 1969, 83 Stat. 742, 30 U.S.C. § 801 et seq.[1] The defendant Finley Coal Company is a partnership which prior to and on December 30, 1970, operated two coal mines at Hyden, Leslie County, Kentucky. The defendant Charles Finley is a partner of the defendant coal company. On December 30, 1970, there was an underground explosion in the interconnected mines; the consequences of that explosion in terms of fatalities are not material to the present case.[2] The consequences of the explosion which are material to this case are charges of multiple violations of the Coal Mine Health and Safety Act of 1969, alleged to have occurred on that date and during the period from June 22, 1970 to January 26, 1971. On February 23, 1971, the Department of the Interior, Bureau of Mines, tendered to the defendant Finley Coal Company a proposed Order of Assessment of Civil Penalties in the amount of Fifty Three Thousand Six Hundred ($53,600.00) Dollars. The order was protested and upon modification, the sum of Fifty Three Thousand Eight Hundred ($53,800.00) Dollars was sought. The amended order has been protested. No payment has been made as a result of the civil proceedings. On June 23, 1971, a Federal indictment was returned against the defendant coal company and Charles Finley charging each, in twenty-four counts, with violations of safety standards established in Subchapter III —Interim Mandatory Safety Standards For Underground Coal Mines, 30 U.S.C. §§ 861 through 878.

The defendants have filed two motions which for this consideration will be treated as a single Motion to Dismiss. Rule 12 F.R.Crim.Proc. Basically, two questions are raised by the Motion to Dismiss: First, that the dual civil and criminal proceedings violate the defendants' 5th Amendment rights against being twice placed in jeopardy for the same offense; Second, that the Secretary of the Interior violated the provisions of Section 811(c), 30 U.S.C. in promulgating "Part 75—Mandatory Safety Standards, Underground Coal Mines"[3] and this violation is of sufficient magnitude to compel dismissal of the indictment. Defendants' contentions will be considered in the order stated.

## I. DOUBLE JEOPARDY

■ Defendants seek dismissal of Counts II, IV, VI, VII, VIII, IX, X, XI, XIII, XV, XIX, XX, XXI, XXII, XXIII and XXIV alleging that to proceed on these counts would constitute double jeopardy in view of a pending civil administrative proceeding which, defendants contend, is punitive in nature. Another ground—violation of the intent of Congress in passing the legislation and the purpose announced in Section 109 of Act by the criminal and civil actions—is raised. No merit is found in the latter argument in view of the clear intent of the Congress to impose both civil and criminal sanctions to implement its findings and declaration of purpose, 30 U.S. C. § 801.

■ Although defendants contend that both the individual and the partnership defendants are cited in the pending administrative proceeding, the face of the Proposed Order of Assessment issued February 23, 1971, shows that the

1. The legislative history of the Act will be found in the following documents: H.R. 91–563, H.R. 13950 (Comm. on Educ. & Labor), H.R. 91–761 (Comm. on Conf.); S.R. 91–411 (Comm. on Labor & Pub.Welf.), Congr.Rec. Vol. 115 (1969); Sept. 25, 26, 29, 30; Oct. 1, 2, 27, 28, 29; Dec. 17 House agreed to Conf.R.; Dec. 18 Senate agreed to Conf.R.

2. Thirty-eight of Thirty-nine miners underground died in the explosion. No

count of the indictment makes material to this case the detail of the death of any fatally injured miner, except as it might apply to the allegation under 30 U.S.C. § 877(n), Counts V and VI of the indictment.

3. Federal Register, Vol. 35, No. 226, Friday, November 20, 1970, Part II, Department of the Interior, Bureau of Mines, Mandatory Standards, Underground Coal Mines.

assessment is limited to Finley Coal Company. Since the recovery of a civil penalty is not clearly sought against Charles Finley, individually, he will not be heard to contend that he has been subjected to the alleged double jeopardy. The question will be considered in relationship to the coal company.

■ It is settled that the Congress may constitutionally impose both a civil and a criminal sanction in the same Act for the same offense. Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938); Rex Trailer Co., Inc. v. United States, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956). A defendant is placed in jeopardy only in those cases where the action is "intended to authorize criminal punishment to vindicate public justice". United States ex rel. Marcus v. Hess, 317 U.S. 537, 549, 63 S.Ct. 379, 386, 87 L.Ed. 443 (1943). Where a statute provides an administrative civil proceeding with right of appeal to the courts for a trial de novo, 30 U.S.C. § 819(a) (4), as to any civil assessment, the "[c]ivil procedure is incompatible with the accepted rules and constitutional guaranties governing the trial of criminal prosecutions, and where civil procedure is prescribed for the enforcement of remedial sanctions, those rules and guaranties do not apply". Helvering v. Mitchell, 303 U.S. 391, 402, 58 S.Ct. 630, 634, 82 L.Ed. 917 (1938). The assertion that a civil assessment of Fifty Three Thousand Eight Hundred ($53,800.00) Dollars necessarily places the defendant coal company in a punitive circumstance, is upon consideration of some sixty individual violations over a period of seven months certainly not conclusive. The civil penalties range from a Twenty-Five ($25.00) Dollar assessment to the maximum of Ten Thousand ($10,000.00) Dollars. Whether or not the proceeding will terminate, if

prosecuted through all appellate steps, in any penalty being asserted on alleged violations identical to those charged in the indictment cannot be known at this time. To say that the institution of civil proceedings per se imports any concept of jeopardy on the defendant goes far beyond any authority brought to the attention of this Court. To make the tenuous assumption that "jeopardy" may apply to a "civil" proceeding within the meaning of the 5th Amendment is one thing; to contend that it attaches at the outset of such proceeding is another. We know of no rule which warrants such construction. To adopt defendant's argument would, in practical effect, bar every criminal prosecution under the Act. Under Section 819(a) (1), the Secretary is directed by the mandatory word, "shall", to impose a civil penalty on any operator who violates a mandatory health or safety standard. Even though the civil penalty sought against the defendant is a substantial amount, the number of alleged violations required repeated inspections of defendant's mines and a major investigation following the explosion of December 30, 1970.[4] The amount in controversy does not require a finding that the asserted civil penalties in this case are other than remedial.

■ Logically, Congress does not expose a defendant twice to jeopardy by establishing comprehensive penalties which may be imposed in separate proceedings instead of a single action where the statute sets forth clear standards regulating the imposition of one or more of such comprehensive penalties. (See the concurring opinion of Mr. Justice Frankfurter, United States ex rel. Marcus v. Hess, 317 U.S. 537, 555, 63 S.Ct. 379, 87 L.Ed. 443 (1943)). The threat of a civil assessment and a criminal penalty against the Finley Coal Company under the Coal Mine Health and Safety

---

4. The official report alone is a document of some 98 pages reflecting extensive investigation, laboratory analyses and engineering. One may not well argue that the asserted imposition of Fifty Three Thousand Eight Hundred ($53,800.00) Dollars in civil penalties was so excessive in relation to the government's costs in monitoring this defendant's mining operations as to necessitate a finding of any punitive aspect to the civil proceeding.

Act of 1969 does not constitute double jeopardy within the meaning of the 5th Amendment. Clearly, the Congress did, in fact, in the Act establish comprehensive penalties to be imposed under stated conditions, some of which are civil and remedial in nature and which are to be applied under elaborate civil procedures and others criminal in nature to be sought only against wilful violators of a mandatory health or safety standard. 30 U.S.C. § 819. That all sanctions imposed by the Act—civil and criminal— seek to insure compliance with the mandatory health and safety standards certainly does not suggest any impropriety.

## II. RULE MAKING

The matter in contention is simply stated. The defendants insist that the Secretary of the Interior in promulgating standards, Part 75—Mandatory Safety Standards, Underground Coal Mines, was obliged to follow the procedure of 30 U.S.C. § 811(c). The United States contends that the Secretary properly proceeded under 30 U.S.C. § 861(d). There is no question that the Secretary did proceed under and "[p]ursuant to the authority of paragraph (d) of Section 301 of the Coal Mine Health and Safety Act of 1969".[5] Section 301 of the Act is codified at 30 U.S.C. § 861.

■■■ At issue is whether the Secretary was under duty to consult with specifically named classes of interested persons as a condition to rule making in this area. The significant language of 30 U.S.C. § 811(c) is: "[i]n the development and revision of mandatory safety standards, the Secretary shall consult with . . . appropriate representatives of the coal mine operators and miners . . . ." Under the section relied on by the Secretary, the statutory direction is expressed in the following language, 30 U.S.C. § 861(d): "[i]n any case where the provisions of Sections 862 to 878, inclusive, of this title provide that certain actions, conditions, or

requirements shall be carried out as prescribed by the Secretary, . . . the provisions of section 553 of Title 5 shall apply . . . .".

The resolution of the issue depends upon what the Secretary did—whether he engaged in rule making, 811(c), or discharged a directive contained in Sections 862 through 878—and his announcement, on its face, seems perfectly candid: [6]

> "Part 75 of Title 30, Code of Federal Regulations, Subchapter O—Coal Mine Health and Safety—Mandatory Health and Safety Standards, *amended and revised as set forth below* is herewith promulgated. (Emphasis added.)

The question is not whether the Secretary had the authority to amend and revise the Mandatory Health and Safety Standards, which he clearly does, but whether he discharged that authority within the conditions specified by the Congress.

The authority to engage in general rule making is granted the Secretary in Section 811(a), 30 U.S.C.:

> "The Secretary shall, in accordance with the procedures set forth in this section, develop, promulgate, revise, as may be appropriate, improved mandatory safety standards for the protection of life and prevention of injuries in a coal mine, and shall, in accordance with the procedures set forth in this section, promulgate the mandatory health standards transmitted to him by the Secretary of Health, Education, and Welfare."

The authority to act on the interim mandatory safety standards which are the subject of Subchapter III of the legislation, Sections 862 through 878, is granted to the Secretary in Section 861(a), 30 U.S.C.:

> "The provisions of Sections 862 through 878 of this title shall be interim mandatory safety standards ap-

5. Federal Register, Vol. 35, No. 226, P. 17890, Nov. 30, 1970.

6. Id.

plicable to all underground coal mines until superseded in whole or in part by improved mandatory safety standards promulgated by the Secretary under the provisions of Section 811 of this title . . . ."

The language of Section 811(c) requires consultation with specifically named classes within or materially concerned about the coal industry in "the development and revision of mandatory safety standards". The Secretary has proceeded to amend and revise the mandatory standards without such consultation. The argument has been considered that the Secretary did not, in fact, engage in the "development and revision of mandatory safety standards" notwithstanding the use of the words "amended and revised" in this promulgation directive. The effect of the standards issued by the Secretary cannot be classed as merely explanatory of the various sections of the Act since these regulations impose definite standards, the violations of which would make the offender subject to civil or possible criminal penalty, and where the language of the standards is by way of definition, the definitions stated determine the point at which a possible offense would be established in fact. It would not be necessary for the Secretary's actions to alter or amend the language of the interim safety standards announced by the Congress in order for Section 811(c) to apply. It is in the very area of implementing the interim safety standards contained in the Act that Congress directed consultation. The failure to consult defeats the intent of the Congress in the rule making area: securing the advice and cooperation of the entire coal industry and appropriate Federal and State governmental agencies in the setting of standards for the "protection of life and prevention of injuries in a coal mine". The degree of concern expressed by the legislation as to the requirement of consultation is evidenced by use of the mandatory verb "shall" and neither this Court

nor the Secretary can avoid the consequences of such directive.

To bring the amended and revised standards within the scope of Section 861(d) authority—and thereby sustain the action of the Secretary—it is necessary to determine that the issuance of the standards constitutes the discharge of some "certain actions, conditions, or requirements" to be carried out as prescribed by the Secretary in Sections 862 through 878. These sections simply do not support a logical construction justifying general rule making in the face of Section 811(a), (b) and (c) in the area of safety standards. No rule of construction has been presented authorizing the Court to ignore the clear language of the Statute.

■ Nine interim mandatory safety standards are cited in the pending indictment. In four of those standards the Secretary is given specific authority; in five the Secretary is not given specific authority. In Sections 864(a), 864(d), 866(d), 873(a) and 873(g) the language is silent as to specific authority delegated to the Secretary. In Section 864(b) the Secretary is given authority to approve "or no less effective methods" to accomplish the object of the Section. In Section 873(c), "[t]he Secretary may, under such safeguards as he may prescribe, permit the firing of more than twenty shots and the use of nonpermissible explosives in sinking shafts and slopes from the surface rock". In Sections 877(c) and (n) the Secretary is given authority to approve, in the former, the plan to keep smoking materials and the like from the underground area; and, in the latter, to approve a self-rescue device which shall be made available to each miner "adequate to protect such miner for one hour or longer". Considering the statutory definitions contained in 30 U.S.C. § 878, which are by construction a part of the Sections reviewed, the legislative plan of giving specific direction and authority to the Secretary is repeated.

Where the regulations or standards promulgated by the Secretary are in response to authority granted in Sections 862 through 878, the regulations are proper and will apply in the trial of this case. But where the regulations published on November 20, 1970 by the Secretary do not reflect the exercise of authority granted in the provisions of Sections 862 through 878, we hold the authority for issuing such standards lies in Section 811 and the conditions imposed by Section 811(c) are applicable. Since no argument is made that the Secretary purported to act under Section 811, we hold that all non-conforming regulations applicable to the nine interim mandatory safety standards cited in the indictment are invalid and shall not apply in the trial of this case. No other regulations promulgated by the Secretary are before the Court.

The holding of defective rule making, however, does not warrant the dismissal of the indictment. The violations alleged in the indictment are cited as violations of interim mandatory safety standards established by the Congress. The absence of augmenting standards, while affecting the nature and perhaps the difficulty of proof, cannot affect the maintenance of the proceeding. However, to insure that both parties to this litigation are protected in their rights to a fair trial, the determination has been made that under the ruling herein made the United States probably cannot make a prima facie case against the defendants under Count No. VII of the indictment without the additional standards and definitions contained in 75.401 and 75.402. Since an immediate review of this Court's ruling is warranted, Count No. VII of the indictment will be dismissed.

An order will be entered forthwith in conformity with this Memorandum Opinion overruling the Motion to Dismiss on the grounds of Double Jeopardy and violation of the intent and purpose of the Act; overruling the Motion to Dismiss, in part, on the grounds of defective rule making; and, sustaining the Motion to Dismiss as to Count VII of the indictment on the ground of defective rule making and apparent inability of the Government to make a prima facie case against the defendants on the statutory language alone.