**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**FINLEY COAL COMPANY, a partnership**
**and Charles Finley, an Individual,**
**Defendants-Appellees.**

**No. 72–2177.**

United States Court of Appeals,
Sixth Circuit.

Argued April 5, 1973.

Decided March 13, 1974.

Eugene E. Siler, Jr., U. S. Atty., Eldon L. Webb, Asst. U. S. Atty., Lexington, Ky., on brief, for plaintiff-appellant.

Bert T. Combs, Louisville, Ky., Edward F. Prichard, Jr., Frankfort, Ky., James S. Wilson, Pineville, Ky., on brief, for defendants-appellees.

Before McCREE, Circuit Judge, O'SULLIVAN, Senior Circuit Judge, and PRATT,* District Judge.

McCREE, Circuit Judge.

This appeal requires us to determine whether the Secretary of Interior's failure to follow the formal rule-making provisions of 30 U.S.C. § 811 in promulgating regulations establishing certain mine safety standards precludes a prosecution for their violation. We hold that is does, and we affirm the order of the district court dismissing Count 7 of a pending twenty-four count indictment that charged defendants-appellees Finley Coal Company and Charles Finley with willful violations of interim mandatory safety standards established by the Federal Coal Mine Health and Safety Act of 1969, Pub.L.91–173, Dec. 30, 1969, 83 Stat. 742, 30 U.S.C. § 801 et seq., and of regulations promulgated by the Secretary of Interior thereunder, 30 C.F.R., Part 75.

Finley Coal Company operated several coal mines at Hyden, Kentucky, and Charles Finley was a partner active in the company. The indictment followed an explosion in appellees' underground mines, in which thirty-eight miners died. Preliminary to trial, appellees challenged the indictment, contending that the regulations implementing the safety standards were invalid because the Secretary of Interior in promulgating them failed to follow the mandatory consultation procedures of 30 U.S.C. § 811. The United States concedes that the Secretary did not engage in consultations sufficient to satisfy Section 811(c) in establishing the challenged safety standards, but argues, nevertheless, that the regulations were properly promulgated pursuant to authority found in several other provisions of the Act, namely, 30 U.S.C. § 861(d) and 30 U.S.C. § 957. The district court upheld certain regulations that it determined were adopted under the specific authority of Section 861, but held invalid all other regulations. It does not appear that the district court considered whether the regulations it held invalid could be sustained under the general grant of administrative authority in Section 957.[1] The court held that the defective rule-making, in itself, did not require dismissal of the indictment because it charged violations not only of the invalidated regulations but also of the standards established by Congress. The court concluded, however, that the government could not make a prima facie case under Count 7 of the indictment on the basis of the statutory standards alone and, accordingly, Count 7 was dismissed. The government apparently concedes that it

---

* The Honorable Philip Pratt, Judge, U. S. District Court for the Eastern District of Michigan, sitting by designation.

1. The district court's decision was rendered in a memorandum opinion, filed July 7, reported at 345 F.Supp. 62, and a supplemental memorandum opinion, filed September 12, 1972. The first opinion does not consider whether the regulations might be sustained under § 957. The second opinion more specifically states:

The Secretary chose to exercise the authority of 30 U.S.C. 861(d) alone and not to incorporate the general administrative rule making authority of 30 U.S.C. 957. The sole question is whether section 861(d) properly may be construed to bring the subject regulations within its range of authority.

could not prevail on this count without the stricken regulations.

The United States brought this appeal, pursuant to 18 U.S.C. § 3731, from dismissal of Count 7 of the indictment. The sole issue presented is whether the Secretary of Interior was required to follow the provisions of 30 U.S.C. § 811 in promulgating the regulations codified in 30 C.F.R. § 75.400.

Count 7 charged willful violations of 30 U.S.C. § 864(a) and the regulations codified at 30 C.F.R. § 75.400.[2] Section 864(a) provides:

> (a) Coal dust, including float coal dust deposited on rock-dusted surfaces, loose coal, and other combustible materials, shall be cleaned up and not be permitted to accumulate in active workings, or on electric equipment therein.

The pertinent regulations provided:

§ *75.400–1 Definitions.*

> (a) The term "coal dust" means particles of coal that can pass a No. 20 sieve.

> (b) The term "float coal dust" means the coal dust consisting of particles of coal that can pass a No. 200 sieve.

> (c) The term "loose coal" means coal fragments larger in size than coal dust.

**2.** As set forth in appellant's brief, Count 7 charged:

COUNT VII

THE GRAND JURY FURTHER CHARGES:

1. Each allegation contained in paragraphs 1 and 2 of the Count I hereof is realleged, reaffirmed, and incorporated herein.

2. On or about June 19, 1970, the Finley Coal Company and Charles Finley did willfully fail to clean up and prevent the accumulation of coal dust, including float dust deposited on rock-dusted surfaces, loose coal, and other combustible materials in active workings of Number 15 underground coal mine, in violation of Sections 109(b) and 304(a) of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 819(b) and 864(a), 30 C.F.R. 75.400.

We observe a curious sequential relationship between the date of the promulgation

§ *75.400–2 Cleanup program.*

A program for regular cleanup and removal of accumulations of coal and float coal dusts, loose coal, and other cumbustibles shall be established and maintained. Such program shall be available to the Secretary or authorized representative.

We first observe the express requirement of mandatory consultation established by 30 U.S.C. § 811. The section provides in pertinent part:

> (a) The Secretary *shall*, in accordance with the procedures set forth in this section, *develop, promulgate*, and *revise*, as may be appropriate, improved mandatory safety standards for the protection of life and the prevention of injuries in a coal mine, and shall, in accordance with the procedures set forth in this section, promulgate the mandatory health standards transmitted to him by the Secretary of Health, Education, and Welfare.

> \* \* \* \* \* \*

> (c) In the development and *revision* of mandatory safety standards, the Secretary *shall consult* with the Secretary of Health, Education, and Welfare, the Secretary of Labor, and with other interested Federal agencies, appropriate representatives of the coal mine operators and miners, other in-

of the regulations cited in Count 7 of the indictment, November 20, 1970, and the date of the violations charged in that count, June 19, 1970. At oral argument, counsel advised us that on June 19, 1970 regulations were in effect with language identical to that found in the November regulations that the indictment charges were violated in the indictment. (Apparently, the earlier regulations were promulgated in March 1970 when the Act first took effect.) Of course, the statutory provision underlying the subject regulations, Section 864(a), which was also relied upon in Count 7, was in effect on the date of the violations charged. Appellant does not raise the question whether a prosecution and conviction relying upon the challenged November regulations, under these circumstances, would violate the constitutional prohibition against ex post facto laws. Since this contention was not made and the question was not briefed and argued, we intimate no views concerning it.

terested persons and organizations, and such advisory committees as he may appoint. Such development and revision of mandatory safety standards shall be based upon research, demonstrations, experiments, and such other information as may be appropriate. In addition to the attainment of the highest degree of safety protection for miners, other considerations shall be the latest available scientific data in the field, the technical feasibility of the standards, and experience gained under this and other safety statutes. (Emphasis added).

■ This language must be construed in light of a definitional provision of the Act, 30 U.S.C. § 802(*l*), which provides:

For the purpose of this chapter, the term—

\* \* \* \* \* \*

(*l*) "mandatory health or safety standard" means the interim mandatory health or safety standards established by subchapters II and III of this chapter, and the standards promulgated pursuant to subchapter I of this chapter; . . .

When Section 811(c) is read in conjunction with the definitional provision it is apparent that Section 811(c) by its terms applies not only when the Secretary develops new mandatory standards but also when the Secretary "revises" an interim mandatory safety standard.

■ Appellant does not now press the argument that the regulations codified in 30 C.F.R. § 75.400 can be sustained under the authority of 30 U.S.C. § 861(d), but that contention does not appear to have been wholly abandoned on appeal. Section 861(d) provides in relevant part:

(d) In any case where the provisions of sections 862 to 878, inclusive,

of this title provide that certain actions, conditions, or requirements shall be carried out as prescribed by the Secretary, or the Secretary of Health, Education, and Welfare, as appropriate, the provisions of section 553 of Title 5 shall apply unless either Secretary otherwise provides. . . .

We agree with the district court that the regulations here at issue cannot be upheld under the authority of Section 861 (d) because Section 864(a) does not provide that the Secretary may prescribe how the "certain actions, conditions, or requirements" set forth therein shall be carried out.

Appellant's primary contention on appeal is that the regulations codified at 30 C.F.R. § 75.400 are interpretative regulations properly promulgated under the general rule-making authority of 30 U.S.C. § 957 to carry out Section 864(a), and, as such, had the effect of law.[3] Section 957 provides: ·

The Secretary, the Secretary of Health, Education, and Welfare, and the Panel are authorized to issue such regulations as each deems appropriate to carry out any provisions of this chapter.

To be sure, the legislative history indicates that Section 957 permits "administrative regulations" needed to carry out provisions of the Act. Senate Report No. 91–411, 91st Congress, 1st Session 87 (1969); H.R.Rep.No.91–563, 91st Congress, 1st Session 618 (1969), U.S.Code Cong. & Admin.News p. 2503. But we have found no indication that Congress intended § 957 to apply in cases involving not only administrative implementing regulations but also modifications of mandatory health and safety standards. If the Secretary was engaged in the "development and revision of mandatory safety standards," within

---

3. Counsel has not contended, nor does our research indicate, that the regulations challenged in this appeal could be sustained under the authority of 30 U.S.C. § 811(j), which provides:

All interpretations, regulations, and instructions of the Secretary or the Direc-

tor of the Bureau of Mines, in effect on December 30, 1969, and not inconsistent with any provision of this chapter, shall be published in the Federal Register and shall continue in effect until modified or superseded in accordance with the provisions of this chapter.

the meaning of § 811(c), then he should have followed the specific procedure of § 811, mandated by the legislative directive to develop and revise these standards. Since specific procedures were established, the Secretary cannot rely upon the general grant of administrative rule-making authority of § 957. *See* Hellmich v. Hellman, 276 U.S. 233, 237, 48 S.Ct. 244, 72 L.Ed. 544 (1928).

 Our examination of the Federal Coal Mine Health and Safety Act, its legislative history, and the entire record before us, indicates that appellant did revise a mandatory safety standard within the meaning of § 811, in promulgating the regulations codified at 30 C. F.R. § 75.400. This conclusion is supported, in the first instance, by the Secretary of Interior's own characterization of his actions. The regulations published on November 20, 1970, were introduced in the following manner:

"TITLE 30—MINERAL RESOURCES

Chapter I—Bureau of Mines
Department of the Interior

Subchapter O—Coal Mine Health and Safety

PART 75—MANDATORY SAFETY STANDARDS, UNDERGROUND COAL MINES

"Pursuant to the authority contained in paragraph (d) of section 301 of the Coal Mine Health and Safety Act of 1969 (Public Law 91–173), there was published in the Federal Registered (sic) for August 14, 1970 (35 F.R. 12911), a notice of proposed rulemaking setting forth proposed amendments and a new Subpart S, 'Approved Books and Records,' to Part 75 of Title 30, Code of Federal Regulations, regarding mandatory health and safety standards in underground coal mines.

"Interested persons were afforded a period of 30 days from the date of

publication of the notice in which to submit written comments, suggestions, or objections to the proposed amendments and the proposed new Subpart S. The period for submitting written comments, suggestions, or objections was subsequently extended to September 30, 1970, by a notice published in the Federal Register for September 5, 1970 (35 F.R. 14146). Approximately 21 associations, companies, and individuals submitted comments, suggestions, or objections. All were given careful consideration. A summary of the comments and an explanation of the actions taken with respect to them will be prepared by the Bureau of Mines and will be available 30 days from the date of this publication in the Office of the Deputy Director for Health and Safety, Room 4512, Bureau of Mines, Department of the Interior, Washington, D.C. 20240.

*"Some of the standards have been revised as suggested; in other instances, revisions were made in view of the comments received.* Some of the suggestions could not be adopted because they were contrary to the statutory provisions.

"Part 75 of Title 30 Code of Federal Regulations, Subchapter O—Coal Mine Health and Safety—Mandatory Health and Safety Standards, Underground Coal Mines, *amended* and *revised* as set forth below is herewith promulgated and shall become effective upon publication in the Federal Register.

WALTER J. HICKEL,
*Secretary of the Interior.*

NOVEMBER 12, 1970."
(Emphasis added).

We agree with appellees that the Secretary could not have made it any plainer that he was amending and revising the standards.[4]

---

4. As noted above, the United States has conceded that the consultations engaged in cannot satisfy 30 U.S.C. § 811(c) if that provision is applicable. Apparently, the consultations that were engaged in preliminary to the promulgation of the regulations were meant to satisfy the less rigorous requirements of 5 U.S.C. § 553, a section of the Administrative Procedure Act. *See* 30 U.S. C. § 861(d).

It is equally clear that the regulations challenged in this appeal were intended to be amendments and revisions of statutory standards. 30 C.F.R. § 75.400–2 imposes a requirement additional to those imposed by Congress in § 864(a). The statute requires only that coal dust be cleaned up and not be permitted to accumulate. It does not require, as did the regulation, that a "regular cleanup" program be established, maintained and made available to the Secretary. In another part of the Act Congress did expressly command that some regular or periodic programs be established and made available to the Secretary to combat other safety hazards addressed by the interim standards. *See, e. g.*, 30 U. S.C. § 863(a), (f), (g) & (w). We conclude that 30 C.F.R. § 75.400–2 changed the standard in § 864(a). Also, 30 C.F. R. § 75.400–1, although cast in definitional language,[5] has the effect of changing the standards established by Congress in § 864(a) if it imposes an additional requirement. And the very fact that the district court determined that a prima facie case could not be made on the basis of § 864(a) alone, in the absence of the regulations, a determination not challenged on appeal, indicates that the regulations altered the legal relations of the parties.

We have examined Gibson Wine Co. v. Snyder, 90 U.S.App.D.C. 135, 86 L.Ed. 249, 194 F.2d 329 (1952); Textile Mills Securities Corp. v. Commissioner of Internal Revenue, 314 U.S. 326, 62 S.Ct. 272 (1941); Toilet Goods Association v. Gardner, 278 F.Supp. 786 (S.D.N.Y. 1968); Toilet Goods Association v. Gardner, 360 F.2d 677 (2d Cir. 1966), aff'd, 387 U.S. 158, 87 S.Ct. 1520, 18 L. Ed.2d 697 (1967), relied upon by appellant in support of the contention that the challenged regulations can be upheld under § 957 as "interpretative" regula-

tions. We agree with appellee that these cases are inapposite because none involved a criminal prosecution and none was considered in a context where Congress had established a procedure permitting the agency to revise statutory standards only after engaging in mandatory consultation procedures with interested and affected parties. It matters not whether under a different statutory scheme a general grant of rule-making authority might have supported the regulations. Here, Congress required a course of consultation as a condition precedent to any substantive revision of mandatory standards, except for modifications specifically authorized under § 861(d).

Also, we reject the suggestion that we should uphold the regulations as contemporaneous constructions of the Act by the person charged with its implementation and enforcement. In doing so, we are aware that under the predecessor statute to the Act here considered, another court has concluded that the interpretation of the statute by the administrator charged with its execution is entitled to great weight. St. Mary's Sewer Pipe Co. v. Director of United States Bureau of Mines, 262 F.2d 378 (3rd Cir. 1959). And we suggest no departure from this principle in the ordinary case involving a prior administrative construction, typically in an adversary context, of a substantive provision of a remedial statute. But whatever applicability this canon may have in a case where the agency's rule-making authority is conceded and only its interpretation of a rule is involved, here the very power of the agency to promulgate the challenged regulation is assailed. Accordingly, we conclude that an administrative officer's interpretation of an Act of Congress to permit him to exercise broad power to flesh-out a statute by re-

5. The label placed upon agency action by administrators is, of course, not conclusive. *See* Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 416, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); Powell v. United States, 300 U.S. 276, 284–285, 57 S.Ct. 470, 81 L.Ed. 643 (1937); A. F. of L. v. Labor Board, 308 U.S. 401, 408, 60 S.Ct. 300, 84 L.Ed. 347 (1940). *See also* Pharmaceutical Manufacturers Association v. Finch, 307 F.Supp. 858 (D.Del.1970).

vising interim statutory standards should be tested with less indulgence. This is particularly true when the interpretation permits promulgation of regulations and their willful violation can result in criminal prosecution. In this instance, we hold that the procedures established by Congress must be strictly observed.

Here, Congress granted the Secretary broad power to revise and even develop new substantive standards to promote the safety of coal miners. However, Congress intended that this authority could be exercised only after compliance with a detailed course of consultation designed to ensure participation in the decision-making process of interested and affected parties.

We hold that the Secretary was obligated to follow, but did not follow, the provisions of § 811(c) in promulgating the regulations codified at 30 C.F.R. § 75.400.[6] Administrative rule-making in disregard of procedural requirements is ultra vires and, we hold that the challenged regulations were improperly promulgated and are invalid. Texaco Inc. v. Federal Power Commission, 412 F.2d 740 (3rd Cir. 1969); Kelly v. United States Department of Interior, 339 F. Supp. 1095 (E.D.Cal.1972); American President Lines, Ltd. v. Federal Maritime Board, 115 U.S.App.D.C. 187, 317 F.2d 887 (1962).

The judgment is affirmed and the case remanded for further proceedings not inconsistent with this opinion.

PHILIP PRATT, District Judge (concurring).

While I concur in the result reached by the majority, I disagree to some extent with the approach.

As I read the opinion, the majority determines that it was the purpose of the Secretary to amend and revise the statutory Interim Mandatory Safety Standards with the promulgation of regulations on November 20, 1970. Reliance is placed on the language contained in the promulgation notice quoted in full in the majority opinion (pp. 289–290, *supra.*) and on the nature and content of those regulations, codified at 30 C.F.R. § 75.400 et seq. It then concludes that all such regulations are invalid because of the failure to conform to the requirements of 30 U.S.C. § 811(c).

It appears to me, however, that the purpose of the regulations issued in November, 1970 was not to amend and revise the statutory interim standards of the Act but rather that the Secretary intended to amend and revise the regulations which had been published on March 28, 1970. In March, as well as in November, 1970, the recitations of authority clearly indicate that the Secretary intended to publish for inclusion in the Code of Federal Regulations the statutory interim standards (e. g. § 75.-400) and to promulgate the standards under Sections 811(j) and 861(d) and interpretative regulations under Section 957.[1] I can find no manifestation of in-

---

6. Only the regulations codified at 30 C.F.R. § 75.400 are at issue on this appeal. We are not called upon to consider, and we intimate no view concerning, the validity of any of the other regulations promulgated in November 1970 and codified in other sections of 30 C.F.R., Part 75.

1. The promulgation statement of the Secretary appearing on March 28, 1970 in the Federal Register reads as follows:
 "Part 75—Mandatory Safety Standards, Underground Coal Mines.
 "Part 75—Mandatory Safety Standards, Underground Coal Mines, reading as set forth below, is added to Subchapter O of Chapter I, Title 30, Code of Federal Regulations. *This part includes mandatory safety standards for underground coal mines which are set forth in Title III of the Federal Coal Mine Health and Safety Act of 1969, other mandatory safety standards issued pursuant to that title and section 101(j) [30 U.S.C. § 811(j)] of the act, and interpretations and supplementary regulations.* Because Title III of the Federal Coal Mine Health and Safety Act of 1969 becomes effective on March 30, 1970, it is impracticable either to give notice of proposed rulemaking on, or to

**292**

tention by the Secretary to amend, revise or improve the statutory Interim Mandatory Safety Standard, nor do I find that such was the effect.

My concurrence in the result is based on the conclusion that, in the posture of this case, the *particular* regulations at issue here (§§ 75.400–1 and 75.400–2) are infirm because they substantively alter the interim standards on the subject and, perforce, their promulgation required conformance with Section 811(a)–(g).[2] Since the Secretary admittedly did not utilize Section 811, and since, in my opinion, other rulemaking grants in the Act do not permit such substantive alterations, Sections 75.400–1 and 75.400–2 are invalid.

This was not to say, however, that other regulations contained in 30 C.F.R. Part 75 would necessarily be invalid, because they might be sustainable under the other rulemaking grants in the Act. This determination could only be made after consideration of individual regulations with reference to the other appropriate rulemaking grants of the Act, i. e. §§ 811(j), 861(d), and 957.

Thus, I am unable to concur in the majority opinion insofar as it may be read to hold that the Secretary's admitted failure to follow the provisions of Section 811(a)–(g) results in the invalidity of *all* regulations promulgated in November, 1970, which are codified at 30 C.F.R. Part 75.

---

delay the effective date of, any of the provisions of the part. Part 75 shall become effective on March 30, 1970.

　　　　Walter J. Hickel
　　　　Secretary of the Interior"
(emphasis supplied) 35 Fed.Reg. 5221

\* 　 \* 　 \* 　 \* 　 \*

"Authority: The mandatory safety standards in this Part 75 either appear in, or are issued pursuant to, Title III of the Federal Coal Mine Health and Safety Act of 1969, Public Law 91–173; other sections in this part are issued pursuant to § 101(j) and § 508 of that Act.

"Note: The provisions of this part marked [statutory Provision] appear in Title III of the Federal Coal Mine Health and Safety Act of 1969." 35 Fed.Reg. at 5223

·2. I have no difficulty determining that the "clean-up program" requirement appearing in Section 75.400–2 is "substantive" in nature and thus beyond the permissible scope of his rule-making authority under the Act. The definitions contained in Section 75.400–1 present a much closer question. On this appeal, however, the government concedes that it could not make a prima facie case against defendants in Count VII of the indictment without both regulations. On that basis, then, given the fact that we must apply the principle of strict construction in criminal matters, I conclude that these definitions also impose an additional burden on coal mine operators and therefore the regulation cannot be sustained as being merely interpretative. See Gibson Wine Co. v. Snyder, 90 U.S.App.D.C. 135, 194 F.2d 329 (1952).