UNITED STATES of America

v.

Curtis STILLWELL.

Crim. No. 1:91–00389–03.

United States District Court,
S.D. West Virginia,
Bluefield Division.

Sept. 18, 1992.

---

Phillip B. Scott, Asst. U.S. Atty., Charleston, W.Va., for U.S.

William Flanigan, Princeton, W.Va., for Stillwell.

OPINION

FABER, District Judge.

On January 16, 1991, an explosion occurred in the Fire Creek No. 1 Mine near Superior in McDowell County, West Virginia, killing two men. An investigation followed which produced the original indictment in this case charging Fire Creek and certain of its agents and employees with criminal violations of the Federal Mine Safety and Health Act of 1977. (30 U.S.C. §§ 801 *et seq.*) (hereinafter the "Act").

A thirty-two-count superseding indictment was returned by a federal grand jury in Charleston, West Virginia, on April 28, 1992. This opinion addresses the validity of several counts of that superseding indictment. The charges contained in the superseding indictment fall generally into two groups. The first group alleges wilful violations of mandatory safety standards pertaining to pre-shift examinations, operation of the mine fan, and ventilation, all in violation of 30 U.S.C. § 820(d), and related false representations said to have been made in records required to be kept by the Act in violation of 30 U.S.C. § 820(f). The second group charges violations of the mandatory safety standards prohibiting smoking articles underground (30 U.S.C. § 877(c)) and related false representations allegedly made in records of searches for smoking articles required to be kept under the Act.

Curtis Stillwell, one of the individual defendants named in the original and in the superseding indictments, has filed a renewed motion to dismiss which questions the validity of nine specific counts contained in the superseding indictment. Stillwell challenges Counts Two and Eight which allege violations of mandatory safety standards applicable to mine ventilation plans. The remaining counts of the superseding indictment attacked by Stillwell in his renewed motion to dismiss are Counts Four and Fourteen, charging violations of 30 U.S.C. § 877(c), which prohibits smoking articles underground and requires the operator to institute a program, approved by the Secretary of Labor, to insure

compliance; and Counts Eighteen through Twenty-two, which charge that false entries pertaining to searches for smokers' articles were made in records required to be kept under the Act in violation of 30 U.S.C. § 820(f). The searches for smokers' articles at issue are called for in Fire Creek's Smoking Program Plan—the program instituted by Fire Creek pursuant to the mandate of 30 U.S.C. § 877(c). This plan required Fire Creek to conduct searches for smoking articles at specified intervals.

Defendant Stillwell contends that the challenged counts must fall because Fire Creek's Smoking Program Plan and Mine Ventilation Plan are not enforceable mandatory safety standards under the Act. Such plans, it is argued, are merely "private agreements" between the Secretary and Fire Creek; to constitute valid mandatory safety standards, defendant contends, the formal rule-making procedures contained in 30 U.S.C. § 811 must be followed. These procedures were not followed with regard to such plans.

▮ In ruling upon the pending motions, the court is essentially confronted with the problem of determining what Congress had in mind with regard to the challenged provisions. The court's role is to "conscientiously attempt to ascertain and faithfully carry out the intent of Congress," * so long as no well-established principle of the Constitution is violated. For purposes of ruling upon a motion to dismiss it is necessary to look to the charges of the indictment itself without reference to the anticipated underlying proof. If a motion to dismiss attacks the sufficiency of an indictment, the allegations of that indictment must be taken as true. *United States v. Sampson*, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962). Evidence outside the indictment should normally not be considered. *United States v. Besmajian*, 910 F.2d 1153 (3d Cir.1990).

Modern law relating to regulation of health and safety in the nation's coal mines dates to 1969 when Congress passed the Federal Coal Mine Health and Safety Act.

This Act greatly increased federal regulation of coal mines, providing for mine inspections and establishing a complex pattern of civil and criminal penalties for violations of the Act's provisions. Imposition of criminal penalties was confined to wilful violations of mandatory safety standards.

The Act was modified in legislation known as the Federal Mine Safety and Health Act of 1977. The concept of the mandatory safety standard as the basis for imposition of criminal penalties remained unchanged. Before criminal penalties could be imposed for violations of the Act a wilful violation of a mandatory safety standard was required. As part of the 1969 Act, Congress had established a number of interim mandatory safety standards which are codified at 30 U.S.C. §§ 861–878. These interim standards provide highly specific requirements relating to ventilation, fire protection and many other details of coal mining. The intent of Congress in establishing these interim standards was to provide a minimum level of protection, but Congress realized that due to developing technology in mining and for other reasons the standards should be allowed to evolve to adjust to changing circumstances and to benefit from experience gained as the standards were put into force. Accordingly, Congress authorized the Secretary of the Interior (now the Secretary of Labor under the 1977 amendments) to promulgate improved mandatory safety standards by means of a complex rule-making process set forth at 30 U.S.C. § 811. New regulations, when promulgated pursuant to section 811, were to replace the statutory interim mandatory standards and become improved mandatory safety standards the violation of which would remain punishable by criminal sanctions.

▮ 30 U.S.C. § 811 directs the Secretary to "develop, promulgate, and revise as may be appropriate, improved mandatory health or safety standards." Formal rule-making procedures are required for standards devised under this section 811 mandate. However, when Congress has direct-

---

* *Zeigler Coal Co. v. Kleppe*, 536 F.2d 398, 402    (D.C.Cir.1976).

ed or authorized a specific action of the Secretary incident to, or as part of, one of Congress's own mandatory interim standards, the section 811 procedures are not required. Such directions contained in the specific interim standards are "self-executing" and become in that instance part of the particular mandatory statutory standard without resort to the formal section 811 rule-making procedures. In *United States v. Finley Coal Co.*, 345 F.Supp. 62 (E.D.Ky.1972), *aff'd*, 493 F.2d 285 (6th Cir. 1974), the court held that regulations or standards promulgated by the Secretary in response to specific authority granted in the interim statutory standards do not require resort to the section 811 procedures. The authority granted the Secretary to approve smoking plans under section 877 was offered as an example of action in which the Secretary was not required to follow the section 811 rule-making procedures. *Finley Coal* was followed on this point by the court in *United States v. Consolidated Coal Co.*, 424 F.Supp. 577, 583–85 (S.D.Ohio 1976). There, the court spoke of a "distinction ... between what could be called self-executing statutes and those dependent upon section 811." Accordingly, the section 811 formal rule-making procedures would appear to be required only where the Secretary acts without specific Congressional guidance in accordance with her general mandate to "develop, promulgate and revise ... improved mandatory health or safety standards." In this case, both the mine-specific ventilation plan under section 863 and the smoking prevention plan called for by section 877 were approved by the Secretary pursuant to this Congressional mandate in a mandatory interim standard and are, therefore, self-executing.

To summarize, we are dealing upon this motion with standards from three sources—(1) the interim statutory safety standards; (2) the standards contained in regulations implementing the interim statutory standards; and (3) mine-specific plans called for by the statutes or regulations. Defendants can be prosecuted criminally under the Act only if the indictment charges them with violations of mandatory

safety standards. There can be no doubt that the interim statutory standards, which the indictment charges were violated by defendants, were intended by Congress as mandatory safety standards under the Act—the statute specifically says so. Likewise, the legislative history of the 1977 amendments to the Act compels the conclusion that Congress adopted the administrative regulations existing at that time as mandatory safety standards even though they had not been promulgated using the section 811 formal rule-making procedures. Federal Mine Safety and Health Amendments Act of 1977, Pub.L. No. 95–164, Section 301(b), 91 Stat. 1290. Therefore, both the specific statutes alleged to have been violated and the regulatory provisions set out in the indictment are mandatory safety standards and the indictment is valid insofar as it charges violations of those standards.

■ Since the allegations of the indictment fairly charge violations of valid statutory mandatory safety standards and valid mandatory safety standards contained in administrative regulations, the challenged counts must stand regardless of validity of the mine-specific plans relevant to those standards. If the plans were deemed invalid, such a decision would not require dismissal of the challenged counts, it would only prohibit evidence concerning the plans to be offered at trial in support of the charged violations of the valid mandatory safety standards contained in the statute and regulations. This is the clear message of *United States v. Finley Coal Co.*, 345 F.Supp. 62 (E.D.Ky.1972). The court in *Finley Coal* held that certain regulations were invalid as mandatory safety standards because they were not passed in conformity with the formal rule-making provisions of 30 U.S.C. § 811. But the court went on to say:

> The holding of defective rule-making, however, does not warrant the dismissal of the indictment. The violations alleged in the indictment are cited as violations of interim mandatory safety standards established by Congress. The absence of augmenting standards, while affecting

the nature and perhaps the difficulty of proof, cannot affect the maintenance of the proceeding.

345 F.Supp. at 62, 67.

Accordingly, the court concludes that the challenged counts of the indictment are valid insofar as they charge violations of specific statutory mandatory safety standards passed by Congress and are likewise valid insofar as they charge violations of regulations which, while not adopted under the section 811 procedures, were nevertheless approved by Congress as mandatory safety standards when the Act was amended.

■ Moreover, this court concludes that the mine-specific smoking prevention and ventilation plans are enforceable under existing case law as if they were mandatory safety standards and that evidence concerning such plans may properly be offered in support of the alleged violations of the mandatory safety standards contained in the statutory and regulatory provisions. The mine-specific plans were formulated under specific authority contained in the statutory interim mandatory standards passed by Congress. As discussed above, such statutes have been held to be "self-executing" and actions taken pursuant to their specific directions therefore become a valid part of the mandatory standards without resort to the section 811 procedures.

In *Zeigler Coal Co. v. Kleppe*, 536 F.2d 398 (D.C.Cir.1976), the court held that plan requirements were enforceable "as if" they were mandatory standards. The court felt that Congress intended this result to give effect to the overall statutory plan of the Act even though the plans were not adopted using the formal section 811 procedures. Following its own decision in *Zeigler*, the same court pointed out recently that, once they have been approved by the Secretary, the plans are mandatory in the sense that a violation of the plan becomes a violation of the Act. *United Mine Workers of America v. Dole*, 870 F.2d 662, 667 (D.C.Cir.1989). The court in *Dole* noted that the *Zeigler Coal* holding was explicitly approved by Congress when it enacted the revised Mine Safety and Health Act in 1977. *Id.* at 667 n. 7.

Defendants recognize the impact of *Zeigler* and *Dole* but argue that these cases should be limited to matters of civil enforcement. In the criminal context, the argument goes, the statutes should be strictly construed to deny enforcement of the plans as part of the statutory mandatory safety standards. Having perceived Congress's intent, as construed in the cases discussed above, to consider such plans as part of the mandatory standard, this court sees no reason to deny enforcement in the criminal context. The reasons to allow civil enforcement of the plans are at least as compelling in the criminal context and there appears to be no indication that Congress intended enforcement of the plans in one context and not the other.

The renewed motion to dismiss is accordingly denied.